*Copy to ct*

**CLERK'S OFFICE**
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**WASHINGTON, DC  20001**

U.S. District Court for the
Middle District of Pennsylvania
Post Office Box 1148
Scranton, PA  18501-1148

00 CV-214

RE:    USA v.   SAMUEL B. MOORE-BEY          *FILED*

CR#:         95-319                          RECEIVED
                                             SCRANTON
Date:        1/12/01              DISTRICT OF COLUMBIA Re

                                         JAN 16 2001

                              MARY E. D'ANDREA, CLERK
                              PER ___LM._____
Dear Clerk:                              DEPUTY CLERK


        Pursuant to Title 28 USC Section 2255, I am forwarding herewith a
certified copy of the Indictment (Information and Waiver of
Indictment), Judgment and Probation, Order for Transfer of
Jurisdiction of Probation and docket sheet.

        Please acknowledge receipt of the enclosed copy of the letter and
include the case number that was assigned to it in your Court.


                              Very truly yours,

                              Nancy Mayer-Whittington
                              Clerk of Court

                              By ___Evette R. Saunders___
                                     Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED

JAN 2 7 2000

NANCY MAYER-WHITTINGTON CLERK
U.S. DIST. COURT

UNITED STATES OF AMERICA,       )
                                )
        v.                      )
                                )       Civil Action No. 99-2680 (SS)
SAMUEL B. MOORE-BEY,            )       Crim. Action No. 95-319 (SS)
                                )
        Defendant.              )
                                )
_____)

## DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO VACATE, SET ASIDE OR CORRECT HIS SENTENCE

In reply to the Government's Response to Defendant's Motion under 28 U.S.C. § 2255 to vacate, set aside or CORRECT his sentence, Defendant essentially strives to resolve the ambiguity within the record, attain clarity, correctly frame the issue, give scope to an authoritative pronouncement of the Court, and receive the relief he seeks.

The Court has jurisdiction to hear Defendant's 2255 Motion in its entirety, and to Correct the implementation of the judgment of the Court by the Bureau of Prisons (BOP), where a misinterpretation of the facts of Defendant's arrest, pre-sentence incarceration status, and the intention of the U.S. District Court's sentence, has resulted in the deprivation of 400-days pre-trial custody credit, contrary to the fundamental principals of justice and the notion of comity.

### JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1291, and 18 U.S.C. § 3553, whereby, the information in the record ably allowed the Court to exercise its sentencing authority meaningfully.

### SUMMARY OF ARGUMENT

Defendant does not claim that an illegal sentence was initially imposed. Rather, a correct federal costodial sentence and a correct credit for pre-trial

custody was additionally imposed to constitute the entire sentence (APP.3,p.17).[1]
Any intervening action by the D.C.Superion Court concerning the amount of punish-
ment for any D.C. offense the Defendant may have committed was purely a matter of
D.C. concern.  A concern subservient to the sovereignty and primary judicial
power of the U.S. District Court.

The BOP has obfuscated the record of these instant matters, erroneously in-
terpreted Defendant's Criminal Docket for this current conviction, misconstrued
his PSI and FBI Rap Sheet, to conclude that he was initially arrested by the
Washington Metropolitan Police Department for D. C. Superior Court offenses. Sub-
sequently, giving D.C. erroneous priority of jurisdiction, and thus, calculating
Defendant's pre-sentence custody time based on misconceptions (APP. 13-1).  De-
fendant's argument in his initial 2255 Motion To Correct His Sentence, serves to
illuminate the BOP's erroneous conclusions regarding who first arrested him(ju-
dicial priority), and for what charges he was initially officially detained (18
U.S.C. § 2113(a)).

The BOP has implemented and misapplied the judgment of the Court to Defendant.
Consequently, he is compelled to appreciate the execution of his sentence minus
credit for time served, contrary to the pronouncement of the Court.  The Court
has, in its discretion, the authority to impose as part of the Defendant's sentence,
credit for time served.

The BOP wrongfully deprived, and the Court appropriatly imposed credit for
time served, in this instant case, where "official detention" (custody) and priority
of jurisdiction belonged exclusively and uninterrupted, to the U.S. District Court,
from the day Defendant was arrested, 11-7-95, and charged with 18 U.S.C. § 2113(a),
until the present.

---

1. "APP." refers to the Appendix attached to Defendant's initial 2255 Motion.

2.

The D.C. Superion Court was afforded limited jurisdiction, by the U.S. District Court, to sentence Defendant on his unrelated D.C. charge, house him in D.C. facilities, "on loan" from the District Court, until such time the District Court completed the adjudication of its case. A correct federal sentence, including a correct credit for pre-trial custody, was imposed. The intervening action by the D.C. sovereign regarding the computation of the unrelated D.C. sentence was accomplished within the territorial sovereignty of the Districe Court, whose prior right acquired by first arrest continued unchanged, since the federal government never relinquished its custody and primary jurisdiction. Under the inviolable rules of comity, which are reciprocal, the District Court could not be deprived of Defendant's custody until through with him.

### ARGUMENT

While the Defendant , a pro se litigant, with whom the experience of these instant circumstances and events are well-defined and decipherable, finds the deprivation of his 400-days credit incredible in the face of a record that is, to him, clear and pellucid, he nevertheless, prays the Court to exercise authority and Correct an on-going miscarriage of justice, where the BOP has misapplied the implementation of the judgment of the Court.

Before Defendant can rightfully perform or began the execution of his sentence, it must first be carried into effect, implemented by the BOP, in a mode and manner not inconsistant with the oral pronouncement of the Court. No guess work, but the true intent, at the imposition of the entire sentence by the Court. Here, 400-days have been lost in the transition between sentencing, implementation and the execution or service of the sentence by the Defendant.

The BOP should not be allowed to say "opps" and wipe clean a slate on which more than 13 months have been written. The appurtenance of the 400-days to Defend-

ant's sentence will not release a convicted criminal into society with his debt still outstanding, but rather, in the interest of justice, shall allow him to serve the entire sentence as imposed by the Court, <u>no more</u> and <u>no less</u>. See: <u>Luther v. Vanyur</u>, 14 F.Supp.2d 773,779(E.D.N.Y.1997).

Where there is a direct conflict between a judge's unambiguous oral pronouncement of sentence and the written judgment, the oral pronouncement must control, even if erroneous. <u>U.S. v. Buchanan</u>, 59 F.3d 914(9th Cir.1995). In this case, there is no such conflict. The judge's oral and written judgment are consistant (APP. 4-2).

Defendant's initial arrest and the establishment of "official detention status" by the U.S. District Court is thoroughly documented in Defendant's 2255 Motion and Appendix (APP. 7 thru 12). The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principal of comity, with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States, it is something more. It is a principal of right and of law, and therefore, of necessity. <u>Covell v. Heyman</u>, 111 U.S. 176, 28 L.Ed. 390.

Key to this instant issue is the prior right acquired by first arrest. D.C. Superior Court was withdrawn from the primary judicial power of the U.S. District Court. The D.C. sentence was imposed after the determination of "official detention" (priority of custody) by the U.S. District Court, and when Defendant was sentenced by D.C., 15-days after his federal arrest, even though Defendant was housed within a D.C. facility, he was "on loan status" to the receiving jurisdiction of D.C., and whether express or implied, D.C. was given only the jurisdiction needed to sentence Defendant by the consent of the U.S.

4.

District Court (See: Diagram #1 , below).  Thereby, leaving the federal

jurisdiction intact, and the federal sovereignty uninterrupted.  Ponzi v.

Fessenden, 258  U.S. 254, 66 L.Ed. 607;  and, Zerbst v. McPike, 97 F.2d 253.



FEDERAL SRA
ARREST FOR
18 § 2113(a)
ON: 11-7-95

FEDERAL SRA
SENTENCE IM-
POSED ON
5-2-96

FEDERAL SRA
SENTENCE BE-
GINS 12-17-
RECEIVE 1-1
CREDIT SRA

←—15-DAYS—→|

UNRELATED D.C. SENTENCE
BEGINS ON 11-22-95.

D.C. S
EXPIRE
12-17-
TURNED
TO SRA

**DIAGRAM #1**

    The fact that there was an outstanding warrant for Defendant by the D.C.

Superior Court at the time he was arrested by federal authorities for federal

charges, in no way jeopardized the primary judicial power of the U.S. District

Court.  Penn General Casualty Co. v. Pennsylvania, 294 U.S. 189,195, 79 L.Ed. 850

(When state and federal courts each proceed against the same res, "the court first

assuming jurisdiction over the property may maintain and exercise that jurisdict-

ion to the exclusion of the other").

5.

If Defendant escapes, is released on bail or probation or parole and does not present himself in Court, the proceedings must, in strict construction, cease. The only method by which the tribunal may reassert jurisdiction is by "arrest." In the meantime, if the accused comes within the territorial jurisdiction of another sovereign, the latter may seize his body and continue him in physical custody if he be accused of an offense against the peace and dignity there of. Herbert v. State of Louisiana, 272 U.S. 312, 71 L.Ed. 270.

Analysis of opinions upon the subject indicates that the "rule of comity," spoken of in the arguments in this case, means nothing more than voluntary consent of the officials or courts who have jurisdiction over the accused given to another court or sovereign to proceed against the accused in a different forum. The power lay with the courts or officials who had possession of the body... Where the body of the accused is in manual possession of one sovereign, surrender can be obtained by another such soverign only by consent of the first or by force. The latter is unthinkable. Strand v. Schmittroth, 251 F.2d 590 (9th Cir.1957); U.S. v. Warren, 610 F.2d 680, 84-85(9th Cir.1980)(A lack of "primary jurisdiction" does not mean that a sovereign does not have jurisdiction over a defendant. It simply means that the sovereign lacks priority of jurisdiction for purposes of trial, sentencing and incarceration.); Roche v. Sizer, 675 F.2d 507(2d Cir.1982); Clark v. Floyd, 80 F.3d 371(9th Cir.1996).

## CONCLUSION

Wherefore, the Court has jurisdiction to hear Defendant's Motion in its entirety, to clarify and to Correct the misapplication of the imposition of its sentence by the BOP. For these reasons, and any others that may appear to the Court, Defendant should receive all credit for time served and earned against his current federal sentence, from his "official detention" at the outset of his

6.

incarceration on November 7, 1995, subsequent to his arrest by federal authorities, until his transfer to the BOP on December 17, 1996.  A total of 400-days.


Respectfully submitted,


Samuel B. Moore-Bey, Defendant Pro Se
Reg. No. #09644-050
FCI - Schuylkill
P.O. Box 759
Minersville, PA  17954-0759


## CERTIFICATE OF SERVICE

I certify that I have caused to be forwarded, by certified mail, the original and two copies of my Reply To The Government's Response To My 2255 Motion To Vacate, Set Aside Or Correct Sentence, to the Office of the Clerk of the Court for the District of Columbia, U.S. Courthouse, 3rd & Constitution Ave., N.W., Washington, D.C. 20001, to be served on all interested parties in this matter, on this _14th_ day of January, 2000.


Samuel B. Moore-Bey, Defendant Pro Se

7.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

SAMUEL B. MOORE-BEY
                    Defendant.

Civil Action No.99-2680 (SS)
Criminal Action No. 95-319 (SS)

F I L E D

NOV 3 0 1999

NANCY MA~~ ~~~~ ~~~~~~~, CLERK
U.S. DISTRICT COURT

## ORDER

This matter is before the Court on defendant Samuel B. Moore-Bey's *pro se* motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. On May 9, 1996 the defendant was sentenced to 151 months on Counts 1, 2, 5, 6, 7 and 9, fined a special assessment of $300 and placed on supervised release for a term of five years. After appealing his sentence based upon a claim he was not advised of his right to appeal he was resentenced. The terms of the resentencing were as follows: 151 months of incarceration on each count to run concurrently; a three year term of supervised release; and a special assessment of $300.

On October 7, 1999, Mr. Moore-Bey filed his current motion. Mr. Moore-Bey sets forth two grounds in support of said motion. (1) Error in the Computation of Sentence by the Bureau of Prisons; and (2) Clerical Mistake in Recording of the term of his Supervised Release. Mr. Moore-Bey was detained and arrested pursuant to federal charges. While in custody he was brought up on an unrelated District of Columbia charge and sentenced to jail for 450 days. In support of his first claim Mr. Moore-Bey claims he should have been credited for these 450 days because he was under the jurisdiction of the federal courts during that time. In support of his second claim Mr. Moore-Bey alleges that there is a clerical mistake in the judgment and

commitment order. Specifically, he claims the court imposed a 3 year term of supervised release at the resentencing. However, the judgment and commitment order refers to a 5 year period. The transcript of the resentencing, attached to Mr. Moore-Bey's petition, confirms Mr. Moore-Bey's allegation.

Section 2255 of Title 28 United States Code provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack , may move the court which imposed the sentence to vacate, set aside or correct the sentence.

The statute goes on to state that, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney."

Mr. Moore-Bey's allegations have been timely and properly brought under 28 U.S.C. § 2255. As the defendant may be entitled to some relief if his allegations prove to be true, Mr. Moore-Bey's motion warrants further investigation. Accordingly, it is hereby

**ORDERED** that the U.S. Attorney file a response to Mr. Moore-Bey's 28 U.S.C. § 2255 Motion by December 15, 1999.

_11/3: '99_
Date

_Stanley Sporkin_
Stanley Sporkin,
United States District Judge

CAT B    APPEAL
PRIOR

## U.S. District Court
### USDC District of Columbia (Washington)

### CRIMINAL DOCKET FOR CASE #: 95-CR-319-ALL

USA v. MOORE                                           Filed: 12/07/95

Other Dkt # 1:95-m -00681

Case Assigned to:  Judge Stanley Sporkin

SAMUEL BERTRELL MOORE (1)                 Reita Pauline Pendry
     defendant                           (202) 208-7500
  [term  05/02/96]                       Suite 550
                                         [COR LD NTC pda]
                                         FEDERAL PUBLIC DEFENDER FOR
                                         D.C.
                                         625 Indiana Avenue, NW
                                         Washington, DC 20004

Pending Counts:                              Disposition

18:2113(a); BANK ROBBERY BY          Defendant Sentenced to One
FORCE OR VIOLENCE                    Hundred Fifty-One (151) Months
(1)                                  Incarceration; Three (3) Years
                                     Supervised Release; Fifty
                                     Dollars ($50.00) Special
                                     Assessment. DEFENDANT
                                     RESENTENCED   to identical
                                     sentence imposed on 5/2/96,
                                     with credit for      time
                                     served.
                                     (1)

18:2113(a); BANK ROBBERY BY          Defendant Sentenced to One
FORCE OR VIOLENCE                    Hundred Fifty-One (151) Months
(2)                                  Incarceration, to run
                                     concurrently; Two (2) Years
                                     Supervised Release, to be
                                     served consecutively; Fifty
                                     Dollars ($50.00) Special
                                     Assessment. DEFENDANT
                                     RESENTENCED   to identical
                                     sentence imposed on 5/2/96,
                                     with credit for      time
                                     served.
                                     (2)



Proceedings include all events.                                    CAT B
1:95cr319-ALL USA v. MOORE                                         APPEAL
                                                                          PRIOR

18:2113(a); BANK ROBBERY BY          Defendant Sentenced to One
FORCE OR VIOLENCE                    Hundred Fifty-One (151) Months
(5 - 7)                              Incarceration, to run
                                     concurrently; Three (3) Years
                                     Supervised Release on each
                                     count, to be served
                                     concurrently  with each other,
                                     and with the terms imposed on
                                     Counts 1 and  2; Fifty Dollars
                                     ($50.00) Special Assessment on
                                     each count.  DEFENDANT
                                     RESENTENCED to identical
                                     sentence imposed on
                                     5/2/96, with credit for time
                                     served.
                                     (5 - 7)

18:2113(a); BANK ROBBERY BY          Defendant Sentenced to One
FORCE OR VIOLENCE                    Hundred Fifty-One (151) Months
(9)                                  Incarceration, to run
                                     concurrently; Three (3) Years
                                     Supervised Release on each
                                     count, to be served
                                     concurrently  with each other,
                                     and with the terms imposed on
                                     Counts 1 and  2; Fifty Dollars
                                     ($50.00) Special Assessment on
                                     each count.  DEFENDANT
                                     RESENTENCED to identical
                                     sentence imposed on
                                     5/2/96, with credit for time
                                     served.
                                     (9)

Offense Level (opening): 4

Terminated Counts:                          Disposition

18:2113(a); BANK ROBBERY BY          Dismissed on oral motion by USA
FORCE OR VIOLENCE                    (3 - 4)
(3 - 4)

18:2113(a); BANK ROBBERY BY          Dismissed on oral motion by USA
FORCE OR VIOLENCE                    (8)
(8)

Offense Level (disposition): 4

Proceedings include all events.                                      CAT B
1:95cr319-ALL USA v. MOORE                                           APPEAL
                                                                          PRIO

Complaints                                    Disposition

COMPLAINT filed in violation
of 18:2113(a) and 2
[ 1:95-m -681 ]


U. S. Attorneys:

  Stephen Pierce Anthony
  (202) 514-1412
  [COR LD NTC gvt]
  U.S. DEPARTMENT OF JUSTICE
  Public Integrity Section
  McPherson Square Station
  P.O. Box 27518
  Washington, DC 20038

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| | ) |
| v. | ) Civil Action No. 99-2680 (RWR) |
| | ) Crim. Action No. 95-319 (RWR) |
| | ) |
| SAMUEL B. MOORE-BEY, | ) **FILED** |
| | ) |
| Defendant. | ) JUL 1 7 2000 |
| | ) |

NANCY MAYER-WHITTINGTON, CLERK.
U.S. DISTRICT COURT

## ORDER

Defendant has filed a motion under 28 U.S.C. § 2255 to
vacate, set aside or correct his sentence.  He claims that the
Bureau of Prisons incorrectly calculated the term of his sentence
and that there is a separate clerical error in his Judgment and
Commitment Order regarding the term of his supervised release.
In its court-ordered response to the defendant's motion, the
government concedes that the defendant's Judgment and Commitment
Order erroneously states the period of his supervised release to
be five years rather than three years.  Accordingly, the Court
will amend the defendant's Judgment and Commitment Order to
correct the error.

Defendant's challenge to the calculation of his sentence by
the Bureau of Prisons must, however, be brought via a petition
for a writ of habeas corpus in the jurisdiction of his
confinement because the defendant is attacking the execution of

-2-

the sentence as opposed to its imposition.  See Preiser v.
Rodriquez, 411 U.S. 475, 487-88 (1973) (holding that prisoner's
claim challenging deprivation of good-time credits sounded in
habeas even if restoration of the credits did not result in his
immediate release); Chatman-Bey v. Thornburgh, 864 F.2d 804, 811-
13 (D.C. Cir. 1988) (en banc) (holding that the proper defendant
in a federal habeas case is the warden of the facility in which
the prisoner is incarcerated and that the habeas court must have
personal jurisdiction over the warden); Perkins v. Henderson, 881
F. Supp. 55, 59 n.4 (D.D.C. 1995) ("It is well settled in this
jurisdiction and elsewhere that § 2255 will lie only to attack
the imposition of a sentence and that an attack on the execution
thereof may be accomplished only by way of habeas corpus in the
district of confinement.").  The remainder of the defendant's
motion will therefore be transferred to the Middle District of

-3-

Pennsylvania where the defendant is incarcerated.[1]  Accordingly, it is hereby

ORDERED that the defendant's Motion to Vacate, Set Aside or Correct his Sentence Pursuant to 28 U.S.C. § 2255 [46] be, and hereby is, GRANTED IN PART.  It is further

ORDERED that the Judgment and Commitment Order issued by the Honorable Stanley Sporkin on October 8, 1997 in the above-captioned criminal case be, and hereby is, AMENDED so that page three of the Judgment and Commitment Order shall state that the defendant shall be placed on a term of supervised release for a term of three years on Counts 1, 2, 5, 6, 7 and 9, all counts to be served concurrently.  It is further

ORDERED that the defendant's Motion to Motion to Vacate, Set Aside or Correct his Sentence Pursuant to 28 U.S.C. § 2255 [46]

---

[1] The government has suggested in accordance with the admonition of Chatman-Bey, 864 F.2d at 814, that the Court first order the defendant to show cause why this case should not be transferred.  However, Chatman-Bey involved a sua sponte transfer in which the prisoner had neither been given notice that the case might be transferred nor an opportunity to explain why the case could and should be heard in this jurisdiction.  Here, by contrast, the defendant has responded to the government's argument that the case should be transferred in his reply brief. Because "[d]elay is undesirable in all aspects of our justice system, but is especially to be avoided in the sensitive context of habeas corpus," id., it is appropriate to transfer immediately so as to secure the speediest possible resolution of this matter.

-4-

be, and hereby is, TRANSFERRED to the Middle District of

Pennsylvania.

SIGNED this ___14th___ day of July, 2000.


_____
RICHARD W. ROBERTS
United States District Judge


United States District Court
for the District of Columbia
A TRUE COPY

NANCY MAYER-WHITTINGTON, Clerk

By _____
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA )
)
           **v.** )      Cr. No. 95-319(SS)
)
SAMUEL B. MOORE-BEY )      THE HON.STANLEY SPORKIN, J.
)
PETITIONER, PRO SE )

## MEMORANDUM IN SUPPORT OF 2255 MOTION
## TO VACATE, SET ASIDE OR CORRECT SENTENCE

    **Petitioner Samuel B. Moore-Bey, Pro Se,** respectfully submits the following Memorandum to support his <u>pro se</u>, Motion to Vacate, Set Aside or Correct Sentence.

### PREVIOUS RELATED LITIGATION

    On May 6, 1997, petitioner filed a <u>pro se</u> Motion To Vacate his sentence, pursuant to 28 U.S.C. §2255.  In that Motion he claimed he had not been advised by the court or his counsel of his right to appeal his May 2, 1996 sentence.  After a review of the sentencing transcript, the government agreed petitioner had not been advised of his right to appeal.  The Honorable Stanley Sporkin ordered the sentence vacated and petitioner be resentenced (APP. 1).

    Because of the unique situation presented when the granting of the prior 2255 Motion merely resulted in resentencing and reinstatement of the right to direct appeal, it does not render this instant Motion "second or successive" under AEDPA. See: <u>U.S. v. Scott</u>, 124 F3d 1328(10th Cir.1997).  An order granting a 2255 petition, and reimposing sentence [to permit direct appeal] resets the counter of collateral attacks pursued. See: <u>Shepeck v. U.S.</u>, 150 F3d 800(7th Cir.1998).  The normal process of pursuing a direct appeal after conviction and the entry of judgment, got off the track for petitioner by no fault of his own. See: <u>In Re God-</u>

1

dard, 170 F3d 435(4th Cir.1999); U.S. v. Cook, 997 F3d 1312
(10th Cir.1993).  This instant Motion should not be counted as
"second or successive" under AEDPA.  Petitioner prays that he be
heard.

### HISTORICAL BACKGROUND

Petitioner Samuel B. Moore-Bey was arrested on November 7,
1995 by a joint robbery task force consisting of D.C. Metropoli-
tan Police, FBI Special Agents, and others, and charged with Bank
Robbery.  On December 7, 1995 he was indicted on nine counts of
bank robbery, Title 18 Section 2113(a).  After entering a plea to
six counts on February 1, 1996, he was sentenced on May 2, 1996,
to 151 months imprisonment on each count to run concurrently, to
be followed by a five year term of supervised release, and a spec-
ial assessment of $300.  No appeal was taken from sentence(APP.2).

On May 6, 1997, petitioner filed a pro se Motion To Vacate,
Set Aside or Correct Sentence, pursuant to 28 U.S.C. Section 2255.
Having not been advised of his right to appeal by the court or
counsel, upon review, the government agreed and the court ordered
his May 2, 1996 sentence be vacated and petitioner be resentenced
(APP.1).

On September 30, 1997, the court resentenced petitioner to
the original custodial sentence of 151 months on each of the six
counts, to run concurrent, a reduced three year term of supervised
release(APP.3,p.15), a special assessment of $300, with payment
time reduced from one year to three months, to be paid upon re-

_____

"APP." refers to APPENDIX.

2

lease, and the addition of credit for time served(APP.4,p.2 and
APP.3,p.17).  On October 2, 1997, a timely notice of appeal was
filed.  Denial of appeal was filed on May 22, 1998(APP.5), and
Certiorari was denied on October 5, 1998(APP.6).

Petitioner now timely challenges his sentence on several
grounds, over which this Court has jurisdiction, pursuant to
Title 18 Section 3585(b), controlling statute for the award of
prior custody credit; Title 18 Section 3571 and FRCP-Rule 36,
Clerical mistakes.  These issues are treated below.

## I.  Computation of Sentence:

Petitioner was arrested on November 7, 1995, by a joint rob-
bery task force consisting of the D.C. Metropolitan Police Depart-
ment(MPD), F.B.I. Special Agents, etc., and charged with Title 18
Section 2113(a) Bank Robbery.  The next day, November 8, 1995,
Det. Gail Russel, MPD, filed a Criminal Complaint and Attached Af-
fidavit with the U.S. District Court for the District of Columbia
(APP.7).  The same day, the 8th, Alan Kay, U.S. Magistrate Judge,
issued a Warrant For Arrest of petitioner, to be brought forthwith
to answer said Complaint(APP.8).

After answering the Warrant, petitioner was held at the D.C.
Central Detention Facility(CDF), without bond.  D.C. is enjoined
from refusing to accept into the D.C. Department of Corrections
(DCDC) facilities prisoners duly designated by the U.S. Attorney
General. See: U.S. v. District of Columbia, 703 F.Supp 982(DDC1988).
"Official detention" means imprisonment in a place of confinement,
not stepulations or conditions imposed upon a person not subject
to full physical incarceration.  U.S. v. Woods, 888 F2d 653, 655
(10th Cir.1989).  On November 15, 1995, Magistrate Judge, Alan Kay,

Ordered petitioner be committed to the custody of the Attorney
General(APP.9), and that the Director, Bureau of Prisons receive
into its custody the body of said petitioner and keep same in the
custody until further order(APP.10).

As a general rule, the first sovereign to arrest a defendant
has priority of jurisdiction for trial, sentencing and incarcer-
ation.  Thomas v. Brewer, 923 F2d 1361,1365(9th Cir.1991); U.S. v.
Warren, 610 F2d 680,684-85(9th Cir.1980).  Finally, Magistrate
Judge, Alan Kay, issued a Detention Memorandum granting the govern-
ments Motion for pretrial detention, concluding that probable cause
existed to find that defendant committed the offense charged, and
that no condition or combination of conditions could be imposed to
reasonably assure the safety of the community should defendant be
released pretrial(APP.11,pp,1-4 and APP.12,pp.4-5).

We live in the jurisdiction of two sovereignties, each having
its own system of courts to declare and enforce its laws in common
territory.  It would be impossible for such courts to fulfill their
respective functions without embarrassing conflict unless rules
were adopted by them to avoid it.  The people for whose benifit
these two systems are maintained are deeply interested that each
system be effective and unhindered in its vindication of its laws.
The situation requires, therefore, not only definite rules fixing
the powers of the courts in cases of jurisdiction over the same
persons and things in actual litigation, but also a spirit of re-
ciprocal comity and mutual assistance to promote due and orderly
procedure. Ponzi v. Fessenden, 42 Sup.Ct. at 310(1922)(Chief Justice
Taft, Majority opinion).

> [**Comity** - the principal of, is that courts of
> one state or jurisdiction will give effect to
> laws and judicial decisions of another state
> or jurisdiction, not as a matter of obligation,
> but out of deference and mutural respect.]

(See:  Full Faith and credit clause- art.IV,Sec. 1 - the various states must recognize legislative acts, public records, and judicial decisions of other states within the U.S.A.).

Comity, with all its principal, forms an especial relationship between the District of Columbia, its courts, and the U.S. District Courts.  Perhaps there is no-other relationship like it in this great country of ours.  The chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose. Id. at 310.

Petitioner sought remedy for grievous error in his sentence computation from the BOP.  The insensate verbal response coupled with an outrageous written attempt to color mine and Ms. Juana Demonia's November 7, 1995 arrest , a Washington Police Department lone endeavor(APP.13,pp.1-4), erroneously giving D.C. primary jurisdiction and priority of custody over what they have listed as **state offenses,** raises this instant occasion to seek judicial review.  For if the BOP can compel anything it chooses and the prisoner cannot escape the obligation to continue on, then there would be no power below to redress and no incentive above to relieve such an unwholesome condition.

Effective in 1987, Section 3585(b) - which specifies, inter alia, that "a defendant shall be given credit toward his term of imprisonment for any time he has spent in official detention prior to the date the sentence commences," if such time "has not been credited against another sentence." Under the predecessor statute, Section 3568, the Attorney General, through the BOP, computed the

amount of credit after taking custody of the sentenced federal of-
fender.  Section 3585(b) does not authorize a district court to
compute the credit at sentencing. U.S. v. Wilson, 117 LEd 2d at
601(1992).  Petitioner has already been sentenced.  The error in
the computation of his sentence by the BOP is at issue here.

No one contends that the Attorney General has unreviewable
discretion to determine the appropriate credit in all cases.
Petitioner contends that his imprisonment in D.C. Central Detent-
ion Facility, from November 7, 1995 until his subsequent transfer
to the BOP on December 17, 1996, constituted "official detention".
His initial arrest was not a lone MPD endeavor, where he was ar-
rested for state charges, and then arrested for federal charges.
His arrest was a joint effort by D.C. and federal officers(APP.7-2
to 7-5), and (APP.14-1 to 14-2).  Petitioner was chased from a
bank, caught, charged with bank robbery under the federal statue,
and his confinement in the D.C.jail was the exclusive product of
action by a joint task force, a federal Magistrate Judge who chose
to hold petitioner without bond, and other federal officials. U.S.
v. Harris, 876 F2d 1502,1506(11th Cir.).

The period from November 7, 1995 until December 17, 1996 is
400-Days.  Time spent in D.C. custody that should be credited a-
gainst his federal sentence.  Under the Zerbst Rule, a rule of
comity under which the first sovereign to arrest an individual can-
not be deprived of the person's custody without its consent.  The
jurisdiction in this case was initially federal.  The place of
initial confinement was state (D.C. jail).  The 400-Days should be
credited to petitioners federal sentence as petitioner was held in
D.C. custody, without bond, on request of federal officials. Zerbst
v. McPike, 97 F2d 253, 254(5th Cir.1938); Ponzi v. Fessenden, 258
U.S. 254, 42 S. Ct. 309, 66 L.Ed 607(1922); U.S. v. Harris, 876 F2d

1502, 1506-07(11th Cir).  (See: APP.7 through APP.12).

On November 22, 1995, while housed in the D.C. Department of
Corrections under a Federal Detention Order, petitioner was sen-
tenced in the D.C. Superior Court on outstanding and unrelated
D.C. charges, to two(2) consecutive terms of 180 days, and on
December 14, 1995 he received an additional consecutive term of 90
days in the same court(APP.15-1 and APP.15-2).  The aggregate sen-
tence of 450 days began on November 22, 1995, fifteen(15) days
after petitioners arrest on November 7, 1995 for federal bank rob-
bery.  Petitioner was now held by two sovereigns, because of the
status of the District of Columbia the relationship of comity is
sui generis.  However, the U.S. District Court held first priority
(APP.9 and APP.10), having had the arrest solidified by federal
jurisdiction in Magistrate Judge, Alan Kay's Courtroom on November
8, 1995 (APP.8), and Ordered into the custody of the Attorney Gen-
eral and the Director, Bureau of Prisons on Nonember 15, 1995(APP.
14).

With limited exceptions, all criminal cases in the District of
Columbia are prosecuted in the name of the United States by the
United States Attorney for the District of Columbia or assistants.
These D.C. and Federal Courts do not belong to the same system, so
far as their jurisdiction is concurrent; and although they coexist
in the same space, they are independent, and have no common superior.
They exercise jurisdiction, it is true, within the same territory,
but not in the same plane; and when one takes into its jurisdiction
a specific thing, that res is as much withdrawn from the judicial
power of the other, as if it had been carried into a different ter-
ritorial sovereignty. Covell v. Heyman, 111 U.S. 176, 4 Sup.Ct. 355,
28 L.Ed. 390.

Notwithstanding the concord enjoyed by the D.C. and Federal

Courts, they are divisible and seperate.  No matter the unique
quality of comity between these sovereigns, it is well established
that the first sovereign to aquire jurisdiction can surrender <u>on
loan</u> to the housing or receiving jurisdiction its prisoner for pro-
secution and for execution of sentence.  <u>Causey v. Civiletti</u>, 621
F2d 691,694(5th Cir 1980); <u>Flick v. Blevins</u>, 887 F2d 778,781(7th
Cir.1989).  The sending state's primary jurisdiction remains in-
tact.  Thus, the action taken by D.C. Superior Court and the D.C.D.C.
concerning the amount of punishment to inflict or good time to award
for the D.C. offense petitioner was sentenced in D.C. Superior Court
for, was entirely unrelated and purely a state (D.C.) concern.  No
matter what D.C. did, the federal "official detention" date started
at the initial arrest on November 7, 1995, and petitioner is enti-
tled to the entire 400-Days credit awarded against his instant fed-
eral sentence(APP.16).

The authority for entitlement to credit for time served in D.C.
custody was established at the initial federal arrest and solidified
once the federal detainer (detention order) was lodged., the D.C.
confinement became the product of action by federal law enforcement
officials.  <u>U.S. v. Garcia-Gutierrez</u>, 835 F2d 585,586(5th Cir1988).
The Court has authority after sentencing , pursuant to Section 3585
(b) to correct manifest injustice in the erroneous computation of my
sentence by the BOP, and award me the credit for time served that I
am entitled.  Petitioner has carried the burden of establishing that
the D.C. confinement was a result and an instant product of direct
action by federal officials.  The government now has the burden of
establishing that pretrial confinement was not the result of initial
federal detainment.  <u>U.S. v. Haney</u>, 711 F2d 113,114-15(8th Cir. 1983).

8

## II. Supervised Release:

On September 30, 1997 petitioner was resentenced by this court. There is a significant error between what was ordered by the court and what is reflected in the Judgment and Committment of the same date. Compare (APP.2-3) Judgment and Committment, five years Supervised Release, with (APP.3,p.15) Sentencing Transcript, three years Supervised Release.

Pursuant to Title 18 Section 3571, Clerical mistakes, and FRCP Rule 36, Clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission may be corrected by the court at any time and after such notice, if any, as the court orders.

There are several legitimate changes in the second sentencing of September 30, 1997 over the first sentencing of May 2, 1996. First, at the first sentencing it was ordered petitioner pay a $300 assessment, which shall be due the first year of supervised release. At the second sentencing of September 30, 1997 this was changed to which shall be due during first three months of supervised release. Compare (APP.2) May 2, 1996 Judgment and Commitment with (APP.4) September 30, 1997 Judgment and Commitment.

Second, per counsel, at the second sentencing, the court added to the order over the first sentencing, credit for time served. See: (APP.3,p.17) and (APP.4-2). September 30, 1997 transcript and Judgment of the same date are consistant on credit for time served issue. All of the foregoing changes are legitimate and consistant with the record.

The third instance, making specific reference to supervised release, is inconsistant with the pronouncement and intent of the Court. At the first sentencing the court went to some lengths to

9

1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,           .   Docket No. CR 95-319
                                    .
            Plaintiff,              .   Washington, D.C.
                                    .   September 30, 1997
    vs.                             .   2:15 p.m.
                                    .
SAMUEL MOORE-BEY,                   .
                                    .
            Defendant.              .
                                    .
. . . . . . . . . . . . . . . .

TRANSCRIPT OF RESENTENCING
BEFORE THE HONORABLE STANLEY SPORKIN
UNITED STATES DISTRICT JUDGE.

APPEARANCES:

For the Government:              ROBERT OKUN, ESQ.
                                 Assistant U.S. Attorney
                                 555 Fourth Street, N.W.
                                 Washington, D.C.  20001


For the Defendants:              REITA PENDRY, ESQ.
                                 Federal Public Defender's Office
                                 625 Indiana Avenue
                                 Washington, D.C.  20004




Court Reporter:                  BEVERLY J. BYRNE
                                 Official Court Reporter
                                 Room 6810 U.S. Courthouse
                                 Washington, D.C.  20001
                                 (202) 273-0899


Proceedings repor                          nscript produced from
dictation.

**APP. 3**

REPORTER

2

P R O C E E D I N G S

THE DEPUTY CLERK:  Criminal 95-319, United States versus Samuel Moore-Bey.  For the government, Mr. Okun.  For defendant, Ms. Pendry.

THE COURT:  All right.  What is the issue here, folks?  Good afternoon, Ms. Pendry.

MS. PENDRY:  Good afternoon, Your Honor.

THE COURT:  You're getting a phone call there.  Go ahead.

MS. PENDRY:  Mr. Moore-Bey was sentenced in May of 1996 I believe it was, and subsequently he filed a pro se 2255, a motion pursuant to 18 U.S. Code 2255 raising three claims.  The first was that he was not advised of his right to appeal from the sentence, and so did not file a notice of appeal within the 10 day period.

The second issue he raised was that the Court did not exercise its discretion to decide whether the Court would depart on the ground of diminished capacity, and he cited to the psychological report that was submitted as an attachment to the sentencing memorandum.

The third issue he raised was that his criminal history was over represented in that he was classed as a career offender on the basis of two very old convictions, one 1974 and one 1975.

After the Court appointed me to represent him in

3

1  this matter, I filed a supplement to that motion on the latter

2  two issues.

3          THE COURT:  Well, the first one I do have to --

4  government agrees that I have to resentence him; is that

5  correct, and give him his warning?

6          MR. OKUN:  That's correct, Your Honor.

7          THE COURT:  And, Ms. Pendry, you don't mind that, do

8  you?

9          MS. PENDRY:  No, Your Honor.  What Mr. Moore-Bey

10  wants the Court to do is to resentence him to consider anew

11  the issue of whether it would be appropriate to depart

12  downward on the grounds of diminished capacity.

13          THE COURT:  Well, what's in the record on that?

14          MS. PENDRY:  What's in the record is a sentencing

15  memorandum and an attachment, a psychological evaluation done

16  by Dr. Barbara Jones.  That was submitted back in May of '96

17  before the original sentencing.

18          THE COURT:  But as I understand it, that that

19  doesn't meet the standards of diminished capacity as

20  recognized by the Sentencing Guidelines.

21          MS. PENDRY:  I don't think that's what the Court

22  found at the last sentencing.  I think the way we left it at

23  the last sentencing was that the Court would be disinclined to

24  grant a downward departure without a government evaluation in

25  addition to the defense evaluation.

4

1          THE COURT:  Did you have a government evaluation?

2          MR. OKUN:  No, Your Honor.  If I may, at the prior

3    sentencing, the defendant raised the same issue about

4    diminished mental capacity.  As Ms. Pendry noted, the Court

5    was disinclined to go along with that recommendation,

6    particularly since there had been no government examination of

7    the defendant in terms of his diminished mental capacity.

8          At that time the Court said it could continue this

9    so that the government could examine the defendant or the

10   government psychologist or psychiatrist could examine the

11   defendant and Ms. Pendry at that time decided that rather than

12   doing that, Mr. Moore was amenable to the Court's resolution

13   of the matter on the day of sentencing.

14         So in other words, she abandoned the diminished

15   mental capacity argument at that time and instead agreed that

16   the Court should proceed with sentencing.  It's the

17   government's position in light of the fact that the defendant

18   abandoned that position at the prior sentencing today the

19   defendant should not be allowed to resurrect that issue, and

20   the Court should simply proceed with resentencing.

21         THE COURT:  Well, now what is it, you have the

22   diminished capacity, over represents.  Okay.  Let me go into

23   the over represents.

24         As I understand it, he's been in jail for a long

25   period of time; am I right?

1          MS. PENDRY:  Well, if you look at his criminal

2     record, there've been sort of the classic drug abuser

3     convictions from time to time.

4          THE COURT:  Well, no, he was a bank robber before.

5          MS. PENDRY:  The bank robberies are the early

6     convictions, the 1974 and 1975.

7          THE COURT:  I know.  But how long was he in jail?

8          MS. PENDRY:  I think about 11 years altogether.

9          THE COURT:  Eleven years, so that takes you to '85.

10    In other words, he says they're very old these priors.  But

11    they're old only because he's in jail and can't go out and

12    commit more priors.

13         MS. PENDRY:  Well, I think the argument that he

14    advanced in his pleading and that we supplemented in our

15    pleading, the argument is that, yes, there was that period of

16    incarceration, but these offenses were committed back when he

17    was I think in his early -- late teens or early 20's.  And to

18    characterize him as a career offender now and increase by

19    three levels -- increase the offense level in this case by

20    three levels for conduct that's now 22, 23 years old is

21    contrary to the spirit at least --

22         THE COURT:  Well, I don't know what spirit you're

23    talking about, but here's a defendant that -- where is the

24    sentencing -- I need the presentence, PSI.

25         Here we're talking about a sentence of what did I

6

1    give him?

2            MS. PENDRY:  One hundred fifty-one months.

3            THE COURT:  A hundred fifty-one months.  When I have

4    to give drug people 210, 240, and all this fellow did was rob

5    six banks, and, you know, there is something that's askew

6    here.  I always thought bank robbery was a pretty bad offense.

7    And my point is that I will give him his warning.  I think on

8    the diminished capacity, there is an exception on that which

9    goes to whether the public needs to be protected, and we're

10   talking about crimes of violence.  I find that these were

11   crimes of violence.  I find that these were -- the public

12   definitely needs to be protected.

13           That here is a gentleman that went and within a very

14   short period of time went out and robbed was it six, how many

15   banks?

16           MR. OKUN:  Six banks, Your Honor.

17           THE COURT:  How many did you -- you charged him with

18   how many?

19           MR. OKUN:  Nine.

20           THE COURT:  Nine.  Goes out and robs nine banks, six

21   of which are charged that he pleads guilty to, and I must tell

22   you that I think that it would be so wrong to put this person

23   out on the street at this time that I could not do it.

24           So I'm going to find that here's a person who has

25   had a history of bank robbery, going back many years, and I

7

1   find that the 151 months, which is, what, a little more than

2   12 years, is adequate for this conduct, and that the

3   adjustment for his capacity, mental capacity, my problem with

4   that is very simply that if this gentleman cannot -- has a

5   problem, mental problem, he needs to be incarcerated.

6       I think it would be -- the system would be turned on

7   its head if we took the position that someone that has

8   difficulty in knowing right and wrong could therefore become

9   acquitted of a case and be let out into society so he could do

10  more.  The minimum would be, if he has that problem, would be

11  to commit him to an institution where he could not do it.  You

12  don't put a person like this back out on the street.

13      And I think I remember this case where it almost

14  reminded me of that picture called Shaw Shank Redemption where

15  people are so attuned to the institutional atmosphere of jail

16  that as soon as they get out, they want to get back in, so

17  they go and commit crimes again.  As I recall, he committed

18  these crimes just shortly after he had been released from

19  prison.

20      MS. PENDRY:  No, I don't think that's right, Your

21  Honor.

22      THE COURT:  How long was it after he was released

23  from prison?

24      MS. PENDRY:  I don't have the presentence report in

25  my head.

8

1        THE COURT:  Let me find out what that was.

2        MS. PENDRY:  I think he was on some form of

3  supervision at the time of the offenses were committed, that

4  the most recent offense was committed.

5      (Pause.)

6        MR. OKUN:  Your Honor, if I may?

7        THE COURT:  Yes.

8        MR. OKUN:  Page 11 of the presentence report

9  indicates the most recent conviction was November 8, 1995 for

10  Bail Reform Act.  A 90 day sentence was imposed.  So that

11  would indicate he was released sometime in the beginning of

12  1996.

13        THE COURT:  Well, just go through these for a

14  second.  He had -- you see, he goes back -- look at this

15  record here.  He goes back to '63 when he's 18, he starts out.

16  Unauthorized use of a motor vehicle.  Six years later,

17  narcotics violation.  Same year, forgery.  Same year -- I

18  mean, two years later, forgery.  8/25/74 at age 29, armed

19  robbery.

20        He then gets paroled in '81.  In '81 he gets locked

21  up again.  Then at age 29 he's caught with a -- carrying a

22  pistol without a license.  Then in '75 at age 30 he robs two

23  banks.  In '82, I don't know how he got out?  How did he get

24  out?  He got 25 years, and he's out by '82.  How does that

25  work?

1          MS. PENDRY:  He was paroled.

2          THE COURT:  He was paroled?  Well, I think it's

3    correct to call him a habitual offender, and that also to deny

4    the diminished capacity on the basis that the public needs to

5    be protected from this individual.

6          MS. PENDRY:  Your Honor, on that point I do want to

7    make two points to the Court.  The first is that under the

8    Chapman case which we cite in our memorandum, bank robberies

9    are not per se crimes of violence.  When the Court looks at

10   the facts of these robberies, Mr. Moore-Bey did not use any

11   weapon.  There were two robberies when threatening conduct was

12   involved, but there were -- these are not armed bank

13   robberies, and they are not, I would submit, by definition

14   crimes of violence given the way they were perpetrated.

15          And the other point is the Court says that the

16   public needs protection from him.  When the Court looks at the

17   psychological report submitted by Dr. Jones, she makes it

18   clear that he does have bipolar disorder, but that with the

19   appropriate treatment including fairly powerful medications,

20   he would be maintained.  That disorder would be in remission,

21   and she would expect to see then that he could lead a law-

22   abiding life, assuming he didn't return to street drugs, which

23   has been a constant --

24          THE COURT:  Luckily that woman is not a judge.

25   Really, you know, very seldom I get this way, but this is a

10

1    horrendous case, and this judge is not going to put this

2    individual back out on the street on some psychiatrist's view

3    that the world is -- that everything is going to be fine in

4    this world.

5         I will tell you if I were predicting, the moment I

6    put him out on the street, he'd be robbing four more banks.

7    And I don't know the case you're citing that says bank robbery

8    isn't a serious offense or is not a crime of violence.  I

9    don't know what could be more than a crime of violence when

10   somebody goes into a teller and issues a note that says, what

11   is it, give me all your 20's.

12        You know, people at the bank, if you ever try to get

13   money from a bank, it's very difficult to get.  I mean, you

14   got to give them your cards and everything else, and there was

15   something fearful about this person going in there and getting

16   the money.

17        The other thing as I recall in the getaway car he

18   gets in a high speed chase with the government which

19   threatened a lot of people in the community, and I think that

20   the -- I just tell you that I can't buy this at this time.

21        MS. PENDRY:  Your Honor, I think I said something to

22   the Court that I didn't mean to say.  The Court said that bank

23   robbery is not per se a crime of violence.

24        THE COURT:  No, I say I'm not saying per se, but I

25   say that it's a crime of violence and under the circumstances

11

1   in these cases, where he gave threatening notes and, you know,

2   I find it is a crime.  I find that you go to any of these

3   tellers and I realize here that there was some teller who said

4   she wasn't scared.  But I don't know how you could not be

5   scared when somebody comes into your bank and, you know,

6   writes a note.

7           And the craze that he was on, going to six or --

8   going to some twice a day.  Now, again, you know, I cry for

9   some of these defendants.  I cry where they take a young woman

10  and make her a courier, make her spend 10 years in prison.

11  That bothers me.  Because that is not a crime of violence, and

12  that woman should have spent the 10 years and just today the

13  government came in and confessed error -- not confessed it but

14  said that I should reduce the sentence.

15          But I'm not bothered by bank robbers.  We got to

16  protect the system.  This is something that's got to be

17  protected.  And we're not going to permit people to go around

18  and rob banks and then come in and say you can't do anything

19  to me because I'm crazy.  I mean, that's -- and what is a

20  bipolar disease, depression?

21          MS. PENDRY:  Severe depression.

22          THE COURT:  It's depression.  I mean, how many --

23  you know, half the people in America suffer from depression --

24          MS. PENDRY:  Well, it's a severe depression.

25          THE COURT:  -- at one time or the other.

12

1    MS. PENDRY:  It's a severe depression with a manic

2  component as I understand it with very severely fluctuating

3  mood swings.

4    THE COURT:  All right.  Does the government want to

5  be heard?  I'm going to --

6    MR. OKUN:  Yes, Your Honor.

7    THE COURT:  Go right ahead.

8    MR. OKUN:  Just briefly.  Just a couple of points in

9  terms of the diminished capacity argument.  First, as the

10  Court knows, it only applies if the defendant committed a non-

11  violence offense, and it also only applies if the

12  significantly reduced mental capacity does not result from the

13  voluntary use of drugs or other intoxicants.

14    In the defense psychologist's own report, she

15  explicitly states that drugs have driven his criminal

16  activity, so that even if he suffered from a significantly

17  reduced mental capacity, he doesn't qualify for this

18  diminished capacity exception, because drugs caused the

19  diminished capacity, according to defendant's own

20  psychologist, and the defendant admitted as such in the

21  presentence report where he admitted that the robberies were

22  the result of his drug use.

23    Second, just one further point to note is that in

24  terms of whether these crimes are crimes of violence, the

25  presentence report notes that the defendant during the

13

1 | robberies usually made a threat such as he didn't want anyone

2 | to get hurt or this thing is going to explode any minute now.

3 | In other words, he was making threats of violence during these

4 | robberies so that these very crimes were violent offenses.

5 | Another reason why the defendant would not qualify for that

6 | exception.

7 |        THE COURT:  All right.  Would the defendant come

8 | forward now, and I'll resentence him.

9 |        Now, for some reason I cut his term back.  You say

10 | 151?

11 |        MS. PENDRY:  That was the sentence originally.

12 |        THE COURT:  Well, apparently the Guidelines calls

13 | for 188.  How does that work?  Is that something new?

14 |        MS. PENDRY:  I believe it was 151 to 188, Your

15 | Honor.

16 |        THE COURT:  Well, I gave him a break, because under

17 | the recommendation from the probation office, they've come up

18 | with 188.  But I'm not going to increase it, though.

19 |        Well, Mr. Moore, what would you like to tell this

20 | judge?  I'm all wrong?

21 |        THE DEFENDANT:  I think you're wrong, Your Honor.

22 |        THE COURT:  All right.  Why do you think I'm wrong?

23 |        THE DEFENDANT:  I think you're wrong in terms of

24 | your evaluation of me personally.  Violence is something that

25 | I haven't displayed in these particular instances.  No one got

14

1    hurt.  And in terms of what the Dr. Jones has described as my

2    diminished mental state, it is somewhat new to me.  I'm not a

3    psychologist but I do comprehend that there is something wrong

4    with the way that I was thinking during those particular

5    misadventures.

6         But what I see here today is that I filed a 2255

7    motion to have some things corrected, some things that I

8    thought were wrong, and what it appears is that as a result of

9    the sentence being vacated, that everything that I said in the

10   2255 motion has been mooted.

11        I can't change Your Honor's opinion.  I feel the

12   same way you do about bank robbery.  It's a despicable thing.

13   However, I would have to lean again on what the doctor has

14   written in her report in terms of the things that contributed

15   to my conduct, some things that I don't fully understand

16   myself.  I think that would be about all I have to say, Your

17   Honor.

18        THE COURT:  All right.  Okay.  Anything further,

19   Ms. Pendry?  I'm prepared to sentence him.

20        MS. PENDRY:  No, Your Honor.

21        THE COURT:  Okay.  Pursuant to the Sentencing Reform

22   Act of 1984, it is the judgment of the Court that the

23   defendant, Samuel Burtrell Moore is going to be hereby

24   committed to the custody of the Bureau of Prisons to be

25   imprisoned for a term of 151 months on Counts 1, 2, 5 through

1  7 and 9, all counts to be served concurrently.

2         Upon release from imprisonment, the defendant shall

3  be placed on supervised released for a term of three years on

4  Counts 1, 2, 5 through 7 and 9, all counts to be served

5  concurrently.

6         Within 72 hours of release from the custody of the

7  Bureau of Prisons, the defendant shall report in person to the

8  probation office in the District in which the defendant is

9  released.  While on supervised release, the defendant shall

10  not commit another federal, state or local crime, shall not

11  possess any firearm or other dangerous weapon for any reason,

12  and shall comply with the standard conditions of supervision

13  that have been adopted by this Court.

14         In addition, the defendant shall comply with the

15  following special conditions.  He shall not use, possess, sell

16  or transport any illegal drugs or associate with any

17  individual who engages in similar conduct, nor shall he

18  frequent any place where illegal drugs are used, sold or

19  distributed.

20         As directed by the probation office, you shall

21  periodically submit to testing to determine if you are using

22  any illegal drugs.

23         Three, you're not to visit any bank for any reason,

24  whether -- you're not to visit any bank for any reason, and

25  that if you want to maintain a bank account, you must do it

16

1   with the approval of the probation office.

2        The Court finds the defendant does not have the

3   ability to pay restitution, a fine or the cost of

4   incarceration or supervision.  Because this sentence is

5   sufficiently punitive, no alternative sanction will be

6   ordered.  It is ordered that the defendant pay a special

7   assessment in the amount of $50 in each count, totaling $300

8   during the first three months of supervision unless paid prior

9   to release.

10       And I now advise you that you have a right to appeal

11  this sentence, and that you must do so within 10 days of the

12  time that the judgment is signed on this sentence and that if

13  you cannot afford a lawyer, a lawyer will be provided to you

14  without cost.

15       And that's it.  I don't know what else to tell you.

16  I really hope that you have learned your lesson.  I do think

17  that these are crimes of violence, and that the public needs

18  to be protected, and that -- and I don't believe that your

19  criminal record over represents -- is over representative of

20  your actions.

21       You know, this is a case where the public needs to

22  be protected, and, you know, a crime spree of nine banks, that

23  cannot be treated lightly.  I would be derelict in my duty if

24  I did not impose a sentence as stiff as this one.  I don't

25  know.  I gave you a break here, and I'm going to continue to

17

1  give the break.  Does anybody know why I gave him 151 rather

2  than 188?

3          MS. PENDRY:  Your Honor, the Guideline range

4  according to the presentence report was 151 to 188 months.

5          THE COURT:  So he must have impressed me.

6          MR. OKUN:  The government had actually agreed with

7  defense counsel that the bottom of the Guideline range --

8          THE COURT:  Oh, was that part of the sentence deal?

9          MR. OKUN:  That's correct.

10          THE COURT:  Oh, I didn't know that.  Well, that's

11  nice of you.

12          MS. PENDRY:  Your Honor, would the Court add to the

13  order that he's to be credited for time served?

14          THE COURT:  Oh, I'm sorry.  Of course, he's going to

15  be credited with time served.  He gets all the credit.  I just

16  hope when you get out you go straight.  How many years have

17  you been in prison now?

18          THE DEFENDANT:  Two.

19          THE COURT:  No, I mean all together in your life?

20          THE DEFENDANT:  I've never added it up, Your Honor,

21  quite a bit.

22          THE COURT:  Quite a bit.  It almost sounds -- did

23  you see that picture, Shaw Shank Redemption?

24          THE DEFENDANT:  I saw a portion of it.

25          THE COURT:  Just a portion?

18

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  It seemed to me that there are some

3    people that really like that institutional setting.

4          THE DEFENDANT:  I don't feel like I'm into

5    institutionalized, Your Honor.

6          THE COURT:  You like to be out?

7          THE DEFENDANT:  I have a couple of problems, but I

8    don't think institutionalization is one of them.

9          THE COURT:  I see.  Well, okay.  Good luck, son.

10         (Whereupon, the proceedings were concluded at 2:45

11    o'clock p.m.)

12                            - - - - -

13

14

15

16

17

18

19                         CERTIFICATE

20

21          I certify that the foregoing is a correct transcript

22    from the record of proceedings in the above-entitled matter.

23

24                         _____
                           BEVERLY J. BYRNE
25                         Official Court Reporter

AO 245 S (Rev. 11/92)(D.C. rev.) Sheet . - Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

**FILED**

OCT 8 ~ 1997

UNITED STATES OF AMERICA

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

v.

Case Number CR 95-319

SAMUEL BERTRELL MOORE-BEY
    Defendant.

## JUDGMENT IN A CRIMINAL CASE
### (For Offenses Committed On or After November 1, 1987)

The defendant, SAMUEL BERTRELL MOORE-BEY, was represented by Reita Pendry.

The defendant pleaded guilty to count(s) 1,2,5,6,7,9.
Accordingly, the defendant is adjudged guilty of such count(s), involving the following offense(s):

| TITLE & SECTION | NATURE OF OFFENSE | DATE OFFENSE CONCLUDED | COUNT NUMBER |
|---|---|---|---|
| 18 USC 2113(a) | Bank Robbery | 6/12/95 | 1 |
| 18 USC 2113(a) | Bank Robbery | 6/27/95 | 2 |
| 18 USC 2113(a) | Bank Robbery | 9/15/95 | 5 |
| 18 USC 2113(a) | Bank Robbery | 10/5/95 | 6 |
| 18 USC 2113(a) | Bank Robbery | 10/12/95 | 7 |
| 18 USC 2113(a) | Bank Robbery | 11/7/95 | 9 |

As pronounced on September 30, 1997, the defendant is sentenced as provided in pages 2 through 4 of this Judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

It is ordered that the defendant shall pay to the United States a special assessment of $ 300.00, for counts 1,2,5,6,7,9, which shall be due during first 3 months of supervised release.

It is further ordered that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this Judgment are fully paid.

Signed this the ___7___ day of ___Oct_____, 19_9_7

STANLEY SPORKIN
United States District Judge

APP 4.1 —

AO 245 S (Rev. 11/92)(D.C. rev.) S. ... 2 - Imprisonment

Judgment--Page 2 of

Defendant: SAMUEL BERTRELL MOORE-BEY
Case Number: CR 95-319

### IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to b
imprisoned for a term of the 151 months on each count to run concurrently with credit for time served

The defendant is remanded to the custody of the United States Marshal.

### RETURN

I have executed this Judgment as follows:

_____

_____

_____ Defendant delivered on _____ to _____

at _____, with a certified copy of this Judgme

_____
United States Marshal

By _____
Deputy Marshal

**APP. 4-2 —**

Judgment--Page 3 of 4

Defendant: SAMUEL BERTRELL MOORE
Case Number: CR 95-319

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of 3 year
on count 1, 2 years on count 2 to be served consecutively; 3 years on counts 5,7 and 9 to be serve
concurrently with each other and with terms imposed in counts 1 and 2. (TOTAL 5 Years).

While on supervised release, the defendant shall not commit another federal, state, or local crime
shall not illegally possess a controlled substance; shall comply with the standard conditions that have bee
adopted by this court (set forth below); and shall comply with the following additional conditions:

1. If ordered to the custody of the Bureau of Prisons, the defendant shall report in person to th
   probation office in which the defendant is released within 72 hours of release from the custody o
   the Bureau of Prisons.

2. If this judgment imposes a fine, special assessment, costs, or restitution obligation, it shall be
   condition of supervised release that the defendant pay any such fine, assessments, costs, an
   restitution that remain unpaid at the commencement of the term of supervised release.

3. The defendant shall not own or possess a firearm or destructive device.

4. The defendant shall not use, possess, sell or transport any illegal drugs or associate with any
   individual who engages in similar conduct; nor shall the defendnat frequent any place where illega
   drugs are used, sold or distributed.

5. The defendant shall submit to drug testing as directed by the Probation Office, and may be place
   in drug treatment program if Probation office deems necessary.

6. The defendant may not enter a bank during the first 3 years of supervised release without the
   permission of the Probation Office.

## STANDARD CONDITIONS OF SUPERVISION

While the defendant is on supervised release pursuant to this Judgment:

1) The defendant shall not leave the judicial district without the permission of the court or probation officer.
2) The defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful an
   complete written report within the first five days of each month.
3) The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.
4) The defendant shall support his or her dependents and meet other family responsibilities.
5) The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or oth
   acceptable reasons.
6) The defendant shall notify the probation officer within seventy-two hours of any change in residence or employment.
7) The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute or administer a
   narcotic or other controlled substance, or any paraphernalia related to such substances.
8) The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.
9) The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convict
   of a felony unless granted permission to do so by the probation officer.
10) The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscatio
    of any contraband observed in plain view by the probation officer.
11) The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforceme
    officer.
12) The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency witho
    the permission of the court.
13) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant
    criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and
    confirm the defendant's compliance with such notification requirement.



AO 245 S (Rev. 11/92)(D.C. rev.) St      - Statement of Reasons

Defendant: SAMUEL BERTRELL MOORE
Case Number: CR 95-319

## STATEMENT OF REASONS

☐ The court adopts the factual findings and guideline application in the presentence report.

### OR

☐ The court adopts the factual findings and guideline application in the presentence report except (see attachment, if necessary):

**Guideline Range Determined by the Court:**

Total Offense Level:_____

Criminal History Category:_____

Imprisonment Range: _____ to _____ months

Supervised Release Range: _____ to _____ years

Fine Range: $_____ to $_____

    ☐ Fine is waived or is below the guideline range, because of the defendant's inability to pay.

Restitution: $_____

    ☐ Full restitution is not ordered for the following reason(s):

☐ The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason depart from the sentence called for by application of the guidelines.

### OR

☐ The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for th following reason(s):

### OR

The sentence departs from the guideline range

    ☐ upon motion of the government, as a result of defendant's substantial assistance.

    ☐ for the following reason(s):

APP 4-4 __

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

**No. 97-3142**                    **September Term, 1997**

95cr00319-01

United States of America,
        Appellee

v.

Samuel Bertrell Moore,
        Appellant



UNITED STATES COURT OF APPEALS
FOR DISTRICT OF COLUMBIA CIRCUIT
FILED

MAY 2 2 1998

CLERK

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**BEFORE:**    Ginsburg, Randolph, and Tatel, Circuit Judges.

### J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs filed by the parties. The court has determined that the issues presented occasion no need for an opinion. See D.C. Cir. Rule 36(b). It is

**ORDERED** and **ADJUDGED** that the judgment and commitment order entered on October 8, 1997, be affirmed, substantially for the reasons stated in the district court's opinion filed October 7, 1997. Appellant has not demonstrated that the district court's factual findings were clearly erroneous or that the relevant provisions of the United States Sentencing Guidelines were improperly applied. See United States v. Leandre, 132 F.3d 796 (D.C. Cir. 1998).

The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C. Cir. Rule 41.

**Per Curiam**



SUPREME COURT OF THE UNITED STATES
OFFICE OF THE CLERK
WASHINGTON, D. C. 20543

October 5, 1998

Ms. Reita Pendry
Asst. Federal Public Defender
625 Indiana Avenue, NW, #550
Washington,  DC 20004

Re:  Samuel Bertrell Moore
v. United States
No.  98-5814

Dear Ms. Pendry:

The Court today entered the following order in the above entitled case:

The petition for a writ of certiorari is denied.

Sincerely,

William K. Suter, Clerk

 APP 6

NOV 08 '95  01:36PM  DC TRANSNATIONA

AO 91 (Rev. 5/85)  Criminal Com

# United States District Court

FOR THE _____ DISTRICT OF ____ COLUMBIA _____

UNITED STATES OF AMERICA
V.
SAMUEL BERTRELL MOORE
DOB: 4/11/45, PDID: 194509
JUANA DEMONIA
DOB: 1/7/66

(Name and Address of Defendant)

### CRIMINAL COMPLAINT

CASE NUMBER:

95 - 0 6 8 1 M - 0 1

I, the undersigned complainant being duly sworn state the following is true and correct to the best of

knowledge and belief. On or about __November 7, 1995__ in __Washington, D.C.__ county, in

_____ District of ____ Columbia ____ defendant(s) did, (Track Statutory Language of Offense)
by intimidation, take from the person and presence of another, money
belonging to, and in the care, custody, control, management, and
possession of the Crestar Bank, 300 Pennsylvania Avenue, S.E., Washingto
D.C., the deposits of which are insured by the Federal Deposit Insurance
Corporation and Juana Demonia did aid and abet the aforementioned offens

In violation of Title ___18___ United States Code, Section(s) 2113(a) and 2 _____

I further state that I am a(n) Det. Gail S. Russell _____ and that this complaint is based on the follo
                               MPD        Official Title

facts:

### SEE ATTACHED AFFIDAVIT

*AFFIDAVIT*
Continued on the attached sheet and made a part hereof:    [X] Yes    [ ] No

Signature of Complainant
Det. Gail S. Russell
MPD

Sworn to before me and subscribed in my presence,

Date                    NOV 3 1995          at    Washington, D.C.
                        Alan Kay                   City and State
                        U.S. Magistrate Judge

Name & Title of Judicial Officer            Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

### SAMUEL BERTRELL MOORE
### &
### JUANA DEMONIA

I, GAIL S. RUSSELL, being duly sworn, do state:

1.    I am a Detective Grade 2 of the Metropolitan Police Department, assigned to the Special Investigations Branch, Bank Squad. I have been employed as a law enforcement officer for eight years. The information contained in this affidavit is a compilation of information that has been provided to me by law enforcement officers of the Metropolitan Police Department (MPD) and agents of the Federal Bureau of Investigation (FBI).

2.    On November 7, 1995, at approximately 12:40 p.m., an individual later identified as SAMUEL BERTRELL MOORE approached a teller window inside the Crestar Bank located at 300 Pennsylvania Avenue, S.E., in the District of Columbia. Defendant MOORE stated, "Hi, how ya doing?," produced a piece of paper and passed it under the security glass of the teller window. The note read, "GIVE US YOUR LARGE BILLS." Defendant MOORE then stated, "Don't do anything stupid, there are three more of us in here." The teller provided defendant MOORE with a stack of $20.00 bills bound together by a band, totalling $2,000.00, as well as an undetermined amount of additional loose bills. Defendant MOORE stated, "Come on, quick -- quick," as the money was being handed over. The teller then pushed

APP. 7-2

the alarm button, and defendant MOORE backed away from the window and ran from the rear door of the bank.

3.   Officer Hayward McGregor Jr. of the Metropolitan Police Department was on duty, in plain clothes, inside the Crestar Bank at 300 Pennsylvania Avenue, S.E., at the time of the robbery. During the robbery, Ofc. McGregor was able to observe defendant MOORE, who looked in Ofc. McGregor's direction twice.

4.   As defendant MOORE exited through the rear door of the bank, Ofc. McGregor pursued him on foot. Ofc. McGregor broadcast a radio lookout to other officers who were conducting surveillance in the vicinity. Other officers joined in the chase.

5.   During the foot chase, defendant MOORE dropped a banded bundle of U.S. Currency onto the sidewalk, which was later recovered by law enforcement officers and determined to be $2,000.00 in $20.00 bills.

6.   Defendant MOORE boarded a 1982 Toyota bearing D.C. tag number 731-404, which was being driven by a black female. The Toyota drove off at high speed, and was chased by several marked and unmarked cars of the Metropolitan Police and Capitol Police. The pursuit, in which the police cars used flashing lights and sirens, continued for several minutes, and covered at least two miles. The pursuit ended near the intersection of 18th and V Streets, S.E., where the Toyota went out of control and ran into a tree. Defendant MOORE was apprehended at the scene of the collision. Also apprehended at the scene of the collision was the driver of the Toyota, who was later identified as JUANA DEMONIA.



APP. 7-3

Due to injuries resulting from the crash, both defendants were transported directly to D.C. General Hospital for treatment.

*Total Take:*
*$5,900.00*
*—2,000.00*
*$ 3,900.00*

7.    The Toyota was impounded at the Washington Field Office of the FBI.  Visible in plain view within the vehicle is an amount of loose U.S. currency.

8.    The victim teller was accompanied to D.C. General Hospital by MPD detectives and FBI agents for a showup identification procedure.  The victim teller viewed defendant MOORE and, upon being asked whether he was the same person who had robbed her a short time earlier, stated, "That looks like him."  Ofc. McGregor independently viewed defendant MOORE and positively identified him, stating, "That's the same man who robbed the bank today."

9.    The undersigned affiant has viewed still photos made from the bank surveillance videotape, and the robber visible in the photos is recognizable as defendant MOORE.

10.    The FBI has confirmed that the Crestar Bank located at 300 Pennsylvania Avenue, S.E., is a bank the deposits of which are insured by the Federal Deposit Insurance Corporation.

11.    Based on the foregoing, your affiant believes there is probable cause to believe that defendant SAMUEL BERTRELL MOORE did, by intimidation, take from the person and presence of another, money belonging to, and in the care, custody, control, management, and possession of a bank, the deposits of which are insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 2113(a), and there is probable cause to believe that defendant JUANA DEMONIA did aid and abet the

APP. 7-4

95 - 0 ⌣ 8 1 M - 0 1

aforementioned offense, in violation of Title 18, United States Code, Sections 2 and 2113(a).

**DETECTIVE GAIL S. RUSSELL**
**METROPOLITAN POLICE DEPARTMENT**

SWORN TO AND SUBSCRIBED BEFORE ME THIS __NOV 8 1995__ DAY OF NOVEMBER, 1995, AT WASHINGTON, D.C.

**UNITED STATES MAGISTRATE JUDGE**

Alan Kay
U.S. Magistrate Judge

APP. 7-5

NOV 08 '95  01:37PM    DC TRANSNATIONA                    P.5

AO 442 (Rev. 12/85) Warrant for Arrest

# United States District Court

FOR THE ———————— DISTRICT OF ———— COLUMBIA

UNITED STATES OF AMERICA
V.

SAMUEL BERTRELL MOORE
DOB: 4/11/45
PDID: 194509

## WARRANT FOR ARREST

CASE NUMBER:

95 - 0681M-01

To: The United States Marshal
    and any Authorized United States Officer

YOU ARE HEREBY COMMANDED to arrest ———— SAMUEL BERTRELL MOORE
                                                        Name

and bring him or her forthwith to the nearest magistrate to answer a(n)

☐ Indictment  ☐ Information  ☒ Complaint  ☐ Order of court  ☐ Violation Notice  ☐ Probation Violation Petition

charging him or her with (brief description of offense)  **by intimidation, taking from the person and presence of another, money belonging to, and in the care, custody, control, management, and possession of the Crestar Bank, 300 Pennsylvania Avenue, S.E., Washington, D.C., the deposits of which are insured by the Federal Deposit Insurance Corporation.**

In violation of Title ____18____ United States Code, Section(s) ___2113(a)___

Alan Kay
U.S. Magistrate Judge
Name of Issuing Officer

Signature of Issuing Officer

Alan Kay
U.S. Magistrate Judge
Title of Issuing Officer

NOV 8 1995        District of Columbia
Date and Location

Bail fixed at $ ————————— by ————————————
                                              Name of Judicial Officer

This warrant was received and executed with                    d defendant at ————

**APP. 8**

DATE RECEIVED    NAME AND TITLE OF ARREST            TURE OF ARRESTING OFFICER

✓

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

NOV 15 1995

Clerk, U.S. District Court
District of Columbia

UNITED STATES OF AMERICA          :

         v.          :  CR. NO.  95-0681M-01

SAMUEL BERTRELL MOORE          :

## O R D E R

It is hereby ordered that the Defendant   Samuel B. Moore

be committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practical, apart from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel.  Upon order of a Court of the United States or at the request of the Attorney General for the Government, the person in charge of the corrections facility shall deliver the Defendant to the U.S. Marshal for the purposes of an appearance in connection with a court proceeding.

Date: November 15 1995

ALAN KAY
MAGISTRATE JUDGE

APP 9

1410&1

## COMMITMENT TO BUREAU OF PRISONS

TYPE OF COMMITMENT:

 X  Pretrial
___ Convicted (Pending Sentence)
___ Convicted (Sentenced)

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

the   15   day of  November   , 19 95

UNITED STATES OF AMERICA

vs.

_Samuel Bartnell Moore_
**(Name of Defendant)**

4-11-45   194509
**(DOB, PDID, DCDC Numbers)**

CRIMINAL NO.  95-681M-1

OFFENSE(S)  Bank Robbery

CODE VIOLATION:  18 USC 2113(a)+

TO: Attorney General of the U.S.
    Director, Bureau of Prisons

    The Court has ordered that the above named defendant be committed to the Bureau of Prisons; therefore receive into your custody the body of said defendant and safely keep in your custody until further order, and this shall be your sufficient warrant.

By the Court:  Alan Kay

NANCY MAYER-WHITTINGTON, Clerk

By:  Oliver V. Jackson Jr.
     Deputy Clerk  (Seal)

Defendant's Court Return Date: _____   Status____  Sentence____
                                           Motion____   Trial____
SENTENCE IMPOSED BY THE COURT:

_____ Months incarceration; Supervised Release of ____ years to follow

Total Special Assessment $_____    Total Fine $_____

Medical Treatment:  Medical Alert

Court Recommends Incarceration at:_____

_____

BOND SET/REDUCED:  HWOB

OTHER:_____

APP. 10

CO-183  (Rev. 4/92

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED

NOV 20 1995

Clerk, U.S. District Court
District of Columbia

UNITED STATES OF AMERICA          :

                    v.             :     CR NO.  95-681M-01

SAMUEL BERTRELL MOORE              :

### DETENTION MEMORANDUM

Defendant, Samuel Bertrell Moore, has been charged in a criminal complaint with by intimidation, taking from the person and presence of another, money belonging to, and in the care, custody, control, management, and possession of Crestar Bank, 300 Pennsylvania Avenue S.E., Washington, D.C. the deposits of which were insured by the Federal Deposit Insurance Corporation (FDIC), in violation of 18 U.S.C. §2113(a).

### Findings of Fact

A Statement of Facts, incorporated herein by reference, was sworn to by Detective Gail S. Russell, MPD, Special Investigations Branch, Bank Squad, setting forth the circumstances leading to the arrest of the defendant.  Detective Russell also testified at the preliminary hearing.

### Discussion

Based upon the Statement of Facts and the facts listed below, I conclude that probable cause exists to find that the defendant committed the offense charged.  18 U.S.C. §3142 (f)(1)(D) & (2)A) provides, _inter alia_, that pretrial detention may be ordered upon a motion by the government attorney if the case involves a crime of violence, any felony if the person had been convicted of two or more

1

APP II

offenses described in § 3142 (f)(1) (A)-(C), or a risk that the person may flee. Therefore, I conclude that the facts in this case bring this offense within the classification for which pretrial detention is both applicable and warranted.

In determining whether a particular defendant should be denied pretrial release because his release would create the unreasonable risk of danger to the community, the Court is required to consider the evidence as it relates to the factors set out in 18 U.S.C. §3142(g).

The first factor, the nature and circumstances of the offense, favors detention. On November 7, 1995, at Crestar Bank located at 5601 3rd Street, S.E., Washington, D.C., an individual, later identified as defendant Moore, approached a teller window inside the Crestar Bank located at 300 Pennsylvania Avenue, S.E., in the District of Columbia. He he gave the teller a note which read "GIVE US YOUR LARGE BILLS." The teller provided defendant Moore with $2,000 in $20 bills in a band, and an undetermined amount of loose bills. The teller then pushed the alarm button, and defendant Moore backed away from the window and ran from the rear door of the bank. Officer McGregor, an MPD officer, was on duty in plain clothes at the Crestar bank at the time of the robbery and observed the defendant. When the defendant fled, the officer pursued him on foot and broadcast a radio lookout to other officers in the vicinity who joined in the chase. The defendant entered a 1982 Toyota with D.C. tags, driven by a black female, and drove off at high speed, with several marked and unmarked MPD and Capitol Police cars in pursuit. The pursuit ended when the Toyota went out of control and ran into a tree. Defendant Moore and the driver of the Toyota were

2

apprehended and transported to D.C. General Hospital for treatment. At the hospital the victim teller viewed the defendant and stated "That looks like him."  Officer McGregor viewed the defendant independently and stated "That's the same man who robbed the bank today." Additionally, Detective Russell in her Affidavit states that she has viewed the still photos made from the bank surveillance videotape, and the robber visible in the photos is recognizable as defendant Moore.

The second factor, the weight of the evidence, also favors detention.  The defendant has been identified as the person who robbed the bank, and was observed during the foot chase dropping a banded bundle of U.S. currency onto the sidewalk, later recovered by law enforcement officers, and determined to be $2,000 in $20 bills.

The third factor, the history and characteristics of the defendant, favors detention. The defendant a/k/a William Wyatt, Leroy Roger Brown, Samuel Bertrel Moore-Bey, Robert Jones, etc. is no stranger of the Criminal Justice System.   He has been convicted on eleven previous charges, including armed robbery, violations under CSA, and prison breach, dating back from 1964.  A bench warrant was issued for his arrest on July 6, 1995, on a pending District of Columbia Superior Court case, where he failed to appear for sentencing. Defendant was also on probation at the time of his arrest on a possession of heroin conviction.  The Pretrial Services Agency report indicates that the defendant is unemployed.  The defendant said he's lived with his mother off and on for 30 years and steadily for the past 2 years.   His mother, on the other hand, said the defendant lives somewhere with a female friend.  He seldom stops her home and does not

3

live there.  She further stated "Be sure.  He can't live here."    The
defendant said he's been in the D.C. area all his life but his mother
said he's also lived in New York, New Jersey, and different places, and
that the defendant has no other family ties in the DC area.

The fourth factor, the nature and seriousness to the community
should he be released pretrial, also favors detention.  The defendant
has a lengthy history of convictions and has proven himself to be a
career criminal.

### Conclusion

Based upon consideration of all the evidence, the factors set out
in § 3142(g), and the statutory presumption, I conclude that the
evidence clearly and convincingly discloses that this defendant's
pretrial release would constitute an unreasonable risk of danger to the
community and conclude by a preponderance of the evidence that his
pretrial release constitutes an unreasonable risk of flight.  Moreover,
upon consideration of the release conditions set out in § 3142(c), I
conclude that no condition or combination of conditions can be imposed
to reasonably assure the safety of the community should this defendant
be released pretrial.  Therefore, the government's motion for pretrial
detention is granted.

November 20, 1995

_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE

4

Proceedings include all events.                                      CAT B
1:95cr319-ALL USA v. MOORE                              ·· ··         APPEAL
                                                                          PRIO

11/8/95  1     MAGISTRATE COMPLAINT and Affidavit filed against SAMUEL
               BERTRELL MOORE, JUANA DEMONIA  in violation of 18:2113(a)
               and 2.
               [ 1:95-m -681 ] (gdf) [Entry date 11/13/95]

11/8/95  --    ARREST WARRANT ISSUED  by Magistrate Judge Alan Kay  for
               SAMUEL BERTRELL MOORE, JUANA DEMONIA .
               [ 1:95-m -681 ] (gdf) [Entry date 11/13/95]

11/9/95  --    DEFENDANT SAMUEL BERTRELL MOORE arrested.
               [ 1:95-m -681 ] (gdf) [Entry date 11/13/95]

11/9/95  2     WARRANT returned executed as to SAMUEL BERTRELL MOORE  on
               11/9/95 .  Return on  arrest warrant issued 11/08/95.
               [ 1:95-m -681 ] (gdf) [Entry date 11/13/95]

11/9/95  --    ARRAIGNMENT on magistrate complaint for SAMUEL BERTRELL
               MOORE held  before Magistrate Judge Alan Kay : Attorney
               appearance for SAMUEL BERTRELL MOORE by Reita Pauline
               Pendry. Preliminary/Detention hearing set for 9:30 11/15/95
               for SAMUEL BERTRELL MOORE, for JUANA DEMONIA. Defendant
               JUANA DEMONIA did not appear. Defendant JUANA DEMONIA in
               hospital. Defendant MOORE committed/commitment issued.
               [ 1:95-m -681 ] (gdf) [Entry date 11/13/95]

11/9/95  3     ORDER by Magistrate Judge Alan Kay  as to SAMUEL BERTRELL
               MOORE : of temporary detention pending hearing pursuant to
               Bail Reform Act  (N)
               [ 1:95-m -681 ] (gdf) [Entry date 11/13/95]

11/15/95 --    PRELIMINARY HEARING  before Magistrate Judge Alan Kay as to
               SAMUEL BERTRELL MOORE, JUANA DEMONIA : Control hearing on
               (10 day hold) set for 9:30 a.m. on 11/17/95 for JUANA
               DEMONIA. Defendants committed/commitment issued. Court
               Reporter: Pro Typists, Inc.
               [ 1:95-m -681 ] (gdf) [Entry date 11/16/95]            .. .

11/15/95 --    DEFENDANT(S) SAMUEL BERTRELL MOORE, JUANA DEMONIA  ordered
               held without bond  by Magistrate Judge Alan Kay .
               [ 1:95-m -681 ] (gdf) [Entry date 11/16/95]

11/15/95 8     ORDER   by Magistrate Judge Alan Kay  as to SAMUEL BERTRELL
               MOORE : committing defendant to the custody of the U.S.
               Attorney General.   (N)
               [ 1:95-m -681 ] (gdf) [Entry date 11/16/95]

11/15/95 9     ATTORNEY APPEARANCE  for SAMUEL BERTRELL MOORE by Reita
               Pendry
               [ 1:95-m -681 ] (gdf) [Entry date 11/22/95]

Proceedings include all events.                                    CAT B
1:95cr319-ALL USA v. MOORE                                         APPEAL
                                                                          PRIOR

11/17/95 --    BOND HEARING before Magistrate Judge Alan Kay as to JUANA
               DEMONIA:Bond set to Work Release. SAMUEL BERTRELL MOORE,
               JUANA DEMONIA ordered held for the Grand Jury - probable
               cause shown. Court directs that the 10 day Hold be
               terminated. Further, Probable cause found as to defendant
               #1 Samuel Moore and defendant #2 Juana Demonia on 11/15/95.
               Hold for Grand Jury. Reporter: Pro-Typists, Inc.
               [ 1:95-m -681 ] (gdf) [Entry date 11/27/95]

11/20/95 11    DETENTION MEMORANDUM  by Magistrate Judge Alan Kay as to
               SAMUEL BERTRELL MOORE .  (N)
               [ 1:95-m -681 ] (gdf)  [Entry date 11/27/95]

12/7/95  12    INDICTMENT filed against  SAMUEL BERTRELL MOORE (1)
               count(s) 1-9 (mlp) [Entry date 12/11/95]

12/7/95  --    CASE ASSIGNED  to Judge Stanley Sporkin  as to SAMUEL
               BERTRELL MOORE . (mlp) [Entry date 12/11/95]

12/7/95  --    Attorney representation for USA  by Stephen Pierce Anthony.
               (mlp) [Entry date 12/11/95]

12/7/95  --    PDID AND DATE OF BIRTH for SAMUEL BERTRELL MOORE :  PDID #:
               194509 DOB: 04/11/45 (mlp) [Entry date 12/11/95]

12/19/95 --    ARRAIGNMENT held  before Judge Stanley Sporkin  as to ,
               SAMUEL BERTRELL MOORE (1) counts 1-9: Plea not guilty
               entered by SAMUEL BERTRELL MOORE (1) count(s) 1-9 .,
               Trial set for 10:00 2/5/96 for SAMUEL BERTRELL MOORE .
               Motion hearing set for 2:30 1/29/96 for SAMUEL BERTRELL
               MOORE . Motions due by 1/10/96 for SAMUEL BERTRELL MOORE
               ., Defendant committed/commitment issued.     Reporter:
               Beverly Byrne (mlp) [Entry date 12/22/95]

12/19/95 14    ORDER by Judge Stanley Sporkin  as to SAMUEL BERTRELL
               MOORE: directing defendant to appear in a line-up at 12:00
               noon on 1/3/96. (N) (mlp) [Entry date 01/02/96]

12/26/95 13    MOTION filed by SAMUEL BERTRELL MOORE to dismiss count(s)
               as to SAMUEL BERTRELL MOORE (1) count(s) cmp, 1-9
               attachments. (mln) [Entry date 12/26/95]

2/1/96   --    STATUS HEARING  before Judge Stanley Sporkin  as to SAMUEL
               BERTRELL MOORE: Plea not guilty withdrawn as to SAMUEL
               BERTRELL MOORE (1) counts 1-2, 5-7, 9. Plea guilty
               entered by SAMUEL BERTRELL MOORE 1 count(s) 1-2, 5-7, 9 .
                SAMUEL BERTRELL MOORE  referred for pre-sentence
               investigation report. Sentence set for 10:00 4/16/96 for
               SAMUEL BERTRELL MOORE. Defendant committed/commitment
               issued.     Reporter: Theresa Sorensen (mlp)
               [Entry date 02/05/96]

2/1/96   15    WAIVER of Trial by Jury as to SAMUEL BERTRELL MOORE .
               Approved by Judge Stanley Sporkin . (mlp)

Docket as of October 7, 1997 3:20 pm             Page 5

Proceedings include all events.                                    CAT B
1:95cr319-ALL USA v. MOORE                                         APPEAL
                                                                          PRIOR
              [Entry date 02/05/96]

2/1/96    16    PLEA AGREEMENT filed as to SAMUEL BERTRELL MOORE . (mlp)
                [Entry date 02/05/96]

5/1/96    17    MEMORANDUM IN AID OF SENTENCING filed by defendant SAMUEL
                BERTRELL MOORE; Exhibits (3) (kk) [Entry date 05/02/96]

5/2/96    --    SENTENCING by Judge Stanley Sporkin for SAMUEL BERTRELL
                MOORE (1) Count(s) 1 : Defendant Sentenced to One Hundred
                Fifty-One (151) Months Incarceration; Three (3) Years
                Supervised Release; Fifty Dollars ($50.00) Special
                Assessment; Count(s) 2 : Defendant Sentenced to One Hundred
                Fifty-One (151) Months Incarceration, to run concurrently;
                Two (2) Years Supervised Release, to be served
                consecutively; Fifty Dollars ($50.00) Special Assessment;
                Count(s) 5-7, 9 : Defendant Sentenced to One Hundred
                Fifty-One (151) Months Incarceration, to run concurrently;
                Three (3) Years Supervised Release on each count, to be
                served concurrently with each other, and with the terms
                imposed on Counts 1 and 2; Fifty Dollars ($50.00) Special
                Assessment on each count, for a total Special Assessment of
                Three Hundred Dollars ($300.00); Count(s) 3-4 and 8
                dismissed on oral motion by USA; Defendant
                committed/commitment issued Court Reporter: Beverly Byrne
                (kk) [Entry date 05/07/96]

5/2/96    18    RECEIPT and Acknowledgment of Presentence Investigation
                Report by USA as to SAMUEL BERTRELL MOORE. (kk)
                [Entry date 05/07/96]

5/2/96    19    RECEIPT and Acknowledgment of Presentence Investigation
                Report by SAMUEL BERTRELL MOORE. (kk) [Entry date 05/07/96]

5/9/96    20    JUDGMENT and Commitment issued by Judge Stanley Sporkin as
                to SAMUEL BERTRELL MOORE. (kk) [Entry date 05/15/96]

7/15/96   21    ORDER  by Judge Stanley Sporkin  as to SAMUEL BERTRELL
                MOORE authorizing transcript of proceeding held on 5/2/96.
                Signed: 7/11/96.  Reporter: Beverly Byrne. (mln)
                [Entry date 07/16/96]

7/17/96   22    TRANSMITTED supplemental record on as to SAMUEL BERTRELL
                MOORE ; Consisting of: Copy of CJA 24 ordering Transcript
                on Appeal,. (mln) [Entry date 07/17/96]

9/18/96   23    TRANSCRIPT filed as to SAMUEL BERTRELL MOORE  for date of
                5/2/96.  Reporter: Beverly Byrne (mln) [Entry date 09/19/96]

5/6/97    24    APPLICATION filed by defendant SAMUEL BERTRELL MOORE to
                proceed in forma pauperis Location of Dft: USP, Allenwood,
                P.O. Box 3000, White Deer, PA 17887 (kk)
                [Entry date 05/12/97]

Docket as of October 7, 1997 3:20 pm                    Page 6

Proceedings include all events.                                    CAT B
1:95cr319-ALL USA v. MOORE                                         APPEAL
                                                                   PRIOR

5/6/97    25    MOTION filed by defendant SAMUEL BERTRELL MOORE to vacate,
                set aside or correct sentence pursuant to 28 USC 2255,
                referencing count(s) 1, 2, 5-7, 9 (Civil Case No: 97-990
                (SS)) (kk) [Entry date 05/12/97]

5/6/97    26    APPLICATION filed by defendant SAMUEL BERTRELL MOORE to
                proceed in forma pauperis . Location of Dft:
                USP-Allenwood, P.O. Box 3000, White Deer, PA 17887 (kk)
                [Entry date 05/22/97]

5/20/97   --    ORDER by Judge Stanley Sporkin as to SAMUEL BERTRELL MOORE
                : granting application by defendant SAMUEL BERTRELL MOORE
                (1) to proceed in forma pauperis [26-1] (Fiat) (N) (kk)
                [Entry date 05/22/97]

5/21/97   27    ORDER by Judge Stanley Sporkin as to SAMUEL BERTRELL
                MOORE : directing the government to show cause within 60
                days of service of defendant's 2255 motion as to why the
                relief requested should not be granted. (N) (mlp)
                [Entry date 06/03/97]

5/27/97   28    RESPONSE by plaintiff USA in opposition to motion to
                vacate, set aside or correct sentence pursuant to 28 USC
                2255, referencing count(s) 1, 2, 5-7, 9 (Civil Case No:
                97-990 (SS)) [25-1] by SAMUEL BERTRELL MOORE . (mlp)
                [Entry date 06/03/97]

6/2/97    29    ATTORNEY APPEARANCE for defendant SAMUEL BERTRELL MOORE by
                Reita Pendry (kk) [Entry date 06/04/97]

6/5/97    30    ORDER by Judge Stanley Sporkin as to SAMUEL BERTRELL MOORE
                : directing that the United States secure the transcript
                of the defendant's sentencing, and file its final
                opposition to defendant's 2255 motion (N) (kk)
                [Entry date 06/11/97]

6/19/97   31    SUPPLEMENTAL SUBMISSION by the UNITED STATES as to SAMUEL
                BERTRELL MOORE (gdf) [Entry date 06/23/97]

6/27/97   32    ORDER by Judge Stanley Sporkin as to SAMUEL BERTRELL MOORE
                : granting motion by defendant SAMUEL BERTRELL MOORE (1) to
                vacate, set aside or correct sentence pursuant to 28 USC
                2255, referencing count(s) 1, 2, 5-7, 9 (Civil Case No:
                97-990 (SS)) [25-1]; Defendant's sentence is vacated;
                Defendant shall be resentenced on 9/11/97 at 2:00 PM; The
                Federal Public Defender shall appoint counsel to represent
                defendant at the resentencing; The U.S. shall prepare a
                writ of habeas corpus ad prosequendum to secure defendant's
                attendance at the resentencing (N) (kk)
                [Entry date 07/05/97]

9/9/97    33    SUPPLEMENT by defendant SAMUEL BERTRELL MOORE to his motion
                to vacate, set aside or correct sentence pursuant to 28 USC
                2255, referencing count(s) 1, 2, 5-7, 9 (Civil Case No:
                97-990 (SS)) [25-1] (kk) [Entry date 09/09/97]

9/10/97   34    WRIT OF HABEAS CORPUS AD PROSEQUENDUM issued to Warden,
                Allenwood, PA, for production of Samuel Moore, for hearing
                on September 30, 1997, as to SAMUEL BERTRELL MOORE .
                Ordered by Judge Stanley Sporkin . (lkn)
                [Entry date 09/11/97]

9/30/97   --    RESENTENCING before Judge Stanley Sporkin for SAMUEL
                BERTRELL MOORE (1) : Motion by defendant SAMUEL BERTRELL
                MOORE (1) to vacate sentence, denied. Sentence of 5/2/96
                reimposed. COUNT 1 : DEFENDANT RESENTENCED to identical
                sentence imposed on 5/2/96, with credit for time served.
                (Defendant Sentenced to One Hundred Fifty-One (151) Months
                Incarceration; Three (3) Years Supervised Release; Fifty
                Dollars ($50.00) Special Assessment.) COUNT 2 : DEFENDANT
                RESENTENCED to identical sentence imposed on 5/2/96, with
                credit for time served. (Defendant Sentenced to One Hundred
                Fifty-One (151) Months Incarceration, to run concurrently;
                Two (2) Years Supervised Release, to be served
                consecutively; Fifty Dollars ($50.00) Special Assessment.)
                COUNTS 5-7, 9 : DEFENDANT RESENTENCED to identical sentence
                imposed on 5/2/96, with credit for time served. (Defendant
                Sentenced to One Hundred Fifty-One (151) Months
                Incarceration, to run concurrently; Three (3) Years
                Supervised Release on each count, to be served concurrently
                with each other, and with the terms imposed on Counts 1 and
                2; Fifty Dollars ($50.00) Special Assessment on each
                count.) Total Special Assessment of Three Hundred Dollars
                ($300.00). Defendant committed/commitment issued.
                Reporter: Beverly Byrne (kk) [Entry date 10/07/97]

10/2/97   35    NOTICE OF APPEAL filed by defendant SAMUEL BERTRELL MOORE
                from Court's oral sentence imposed on 9/30/97 and entered
                on 10/7/97. Appeal references SAMUEL BERTRELL MOORE (1),
                count(s) 1, 2, 5-7, 9. Counsel and defendant notified.
                Docketing statement received.  NO FEE: FPD (kk)
                [Entry date 10/07/97]

10/7/97   36    TRANSMITTED PRELIMINARY RECORD on appeal [35-1] by SAMUEL
                BERTRELL MOORE to U.S. Court of Appeals and Counsel.
                Docketing Statement attached. (kk) [Entry date 10/07/97]



**U.S. Department o. _ustice**

Federal Bureau of Prisons

*U.S. Penitentiary, Allenwood*

*White Deer, PA 17887-3500*

April 8, 1997

MEMORANDUM FOR MOORE, SAMUEL BERTRELL
                REGISTER NUMBER: 09644-050
                UNIT VB-232U

FROM:       Chris Angelini
            Assistant Inmate Systems Manager

SUBJECT:    Inmate Request to Staff Member Dated 04/02/1997


In your request, you state that you should receive an additional
award of prior custody credit from 11-08-1995 through 12-16-1996.
A review of your file indicates the following.

On 11/08/1995, you were arrested by the Washington Police
Department, for violations of the Bail Reform Act, D.C. Superior
Court offenses. See attached Criminal Docket for your current
conviction which references an arrest warrant being issued by
federal authorities. This arrest date is also listed in the
presentence investigation report, page 11, paragraph 55, as well as
the FBI Rap Sheet, which indicates that the **state offenses** were for
Robbery Fear, and Failure to Appear. If you wish to review your
PSI and your FBI Rap Sheet, you may do so by directing a response
with your unit team.

On November 22, 1995 you were sentence in D.C. Superior Court to
two (2) separate terms of 180 days imprisonment under Docket #'s:
M16734-94B & M16734-94C (See attached DC Face Sheet). On December
14, 1995, you received an additional term of 90 days consecutive
under Docker #: F9493-95C. The D.C. Face Sheet indicates that you
were awarded jail credit from 11/09/1995 through 11/21/1995, the
day before sentencing in D.C. Superior Court. Your aggregate
sentence of 450 days began on November 22, 1995. You were paroled
to a federal detainer on December 17, 1996 for service of your
current sentence.

Title 18, United States Code, § 3585(b), is the controlling statute
for the award of prior custody credit, which states, "A defendant
shall be given credit toward the service of a term of imprisonment
for any time he has spent in official detention prior to the date
the sentence commences, (1) as a result of the offense for which
the sentence was imposed; or (2) as a result of any other charge
for which the defendant was arrested after the commission of the
offense for which the sentence was imposed; that has not been



<u>credited against another sentence"</u>.

Pursuant to the above information, and source documents contained in your file, an additional award of credit would be contrary to Title 18, U.S.C. § 3585(b). The attached document that was submitted with your request is merely a Criminal Complaint which indicates that you did commit the offense Bank Robbery on November 7, 1995, which is count 9, as stated on your Judgment & Commitment Order. Your request cannot be granted as this period of time was previously awarded to your D.C Superior Court sentences.



n-3-97 : 12:55 :D.C. Jail -- RECORDS-            717 547 6299:# 2

DP Form 19 DCDC-7-70

DISTRICT OF COLUMBIA
DEPARTMENT OF CORRECTIONS
FACE SHEET No. 2

Date
Prepared
12-15-95
(Mo., Da., Yr.)

| DCDC Number 141821 | Name (Last, First, Middle) Moore, Samuel | | | | | | Race B | Sex M |
|---|---|---|---|---|---|---|---|---|
| Height | Weight | Build | Eyes | Hair | Age | Birth Date 4-11-45 | Place of Birth Wash., D.C. | |

**TOTAL SENTENCE:  450 days**

| Offense | POSS. COCAINE | POSS. HEROIN | BRA |
|---|---|---|---|
| Case Number | M16734-94B | M16734-94C | F9493-95C |
| Sentence (Yrs., Mos., Days) | 180 days | 180 days (cons.) | 90 days (cons.) |
| Warrant Executed / Sentence Begins (Mo., Da., Yr.) | 11-22-95 | 11-22-95 | 12-14-95 |
| Full Term Date (Mo., Da., Yr.) | | | 1-31-97 |
| Short Term / M.R. Date (Mo., Da., Yr.) | | 12-17-96 EPA | 1-31-97 |
| Parole Eligibility Date (Mo., Da., Yr.) | | | 4-6-96  EPA 1-1-96 |
| Max. Supervision Date (Mo., Da., Yr.) | | | N/A |
| Statutory Good Time Rate / Month | | | OMNIBUS CRIME ACT |
| Plea | Not Guilty | Not Guilty | Guilty |
| Committing Judge | Canan | Canan | Peters |
| Defense Attorney | | | |
| Initialed By. | | | |

**DETAINERS**

| Date Filed | For | Action | Date |
|---|---|---|---|
| 5-5-96 | (1) MONTH (CONS) FEDERAL SENTENCE | | |

**CONDUCT CREDITS**

| Credits | Forfeit | Restore | Balance |
|---|---|---|---|
| | | | |

**JAIL CREDIT DATES**

| From and Including 11/9/95 | To and Including 11/21/95 = 73 days |
|---|---|

**REMARKS**

Pending case: 95-681M01
95-Day Sentence
Reduced by 73 days EPA
STI reduced by 45 days EPA

APP. 13-3

NT BY:                    2- 3-97 :  12:55 :D.C. Jail -- RECORDS-         717 517 6288-# 3

**District of Columbia Department**
**of Corrections**                                                      Release Authorization

| Inmate's Name | 1. | DCDC No. | 2. | Institution | 3. | Date | 4. |
|---|---|---|---|---|---|---|---|
| Moore, Samuel | | 141-821 | | CDF | | 12-17-96 | |

| Release Date | 5. | Method | 6. | Detainer: | Yes | 7. |
|---|---|---|---|---|---|---|
| 12-17-96 | | Federal Removal | | XXX No | | |

Custody Will Be Taken By:                                    8.    | Place By: _____
                                                                    | Notified (CDF) _____
Officer from BOP Bus                                                | Date. _____

CERTIFICATION:  I certify that this release is in accordance with applicable and controlling rules,    9.
regulations, and statutory provisions.  I have personally reviewed this inmate's
Institutional Record and determined that there is no information that would prevent
release by the method stated above and all detainer information has been personally
reviewed by me.

| Name/Title | 10. | Signature | 11. | Date | 12. |
|---|---|---|---|---|---|
| Legal Instruments Examiners | | | | 12-17-96 | |

Special Instructions (If Any)                                    13.   Photo                14.

---

**Release Action**

Identified By  R & D                                        15.   Released To:                16.
Control:

                                                                  Transported By:             17.

Date of Release:                                           18.   Time of Release:             19.

---

**Receipt of Agency Taking Custody**

I have received the above named inmate, together with his/her Institutional Record (if Applicable)

| Name/Title | 20. | Signature | 21. | Date |
|---|---|---|---|---|

Location:

White -        Institution Record - Original
Yellow -       R & D Copy
Pink -         Inmate Copy
Gold -         Record Office Copy

IDPS-1595

**APP. 13-4**

D-302 (Rev. 3-10-82)

-1-

## FEDERAL BUREAU OF INVESTIGATION

000133

Date of transcription      11/8/95

      The following investigation was conducted by the undersigned and Detective GAIL RUSSELL of the Washington Metropolitan Police Department (MPD) inside the District of Columbia General Hospital, 19th and Massachusetts Avenue, Southeast, Washington, D.C., subsequent to the arrest of SAMUEL B. MOORE:

      MPD Officer HAYWARD MCGREGOR, JR., badge number 3668, assigned to the first Police District observed SAMUEL B. MOORE, black male, DOB: 4/11/45, SSAN: 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 inside the hospital emergency room and advised the following:

      MCGREGOR stated that MOORE was "the same man who robbed the bank earlier today". MCGREGOR advised further that earlier today he had been inside the Crestar Bank located at 300 Pennsylvania Avenue, SE, Washington, D.C. He indicated that he had observed MOORE inside the bank, and had chased him out of the bank subsequent to the robbery.

      MCGREGOR related that MOORE had been wearing a 3/4 length light blue zip-up jacket, and a green baseball cap with an orange bill and possibly a "FMU" school logo, black pants, and black shoes. MCGREGOR advised that he had transmitted the lookout containing MOORE's description over his MPD police radio.

---

Investigation on   11/7/95   at   Washington, D.C.

File #   91A-WF-201396

by   SA MILTON D. CHALKLEY

**APP. 14-1**

This document contains neither recommendations nor conclusio          is loaned to your agency;

302 (Rev. 3-10-82)

C ¹ ⁷

000135

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription    11/9/95

The following investigation was conducted on November 9, 1995 by Special Agents (SAs) DENNIS M. CONDON, MILTON D. CHALKLEY, and THOMAS M. FLOSNIK, FBI, Washington Metropolitan Field Office (WMFO), and Detectives GAIL S. RUSSELL and ANTHONY JOHNSON, Metropolitan Police Department, pursuant to the robbery of the CRESTAR BANK, 300 Pennsylvania Avenue, SE, Washington, D.C., which occurred on November 7, 1995:

A search warrant was executed at the FBI, WMFO, on a 1982 Toyota Tercel Corolla, bearing Washington, D.C. tag number 731-404. The search commenced at approximately 9:44 a.m., with SA FLOSNIK photographing the vehicle, and SA CHALKLEY maintaining a photolog. At approximately 9:47 a.m., SA FLOSNIK opened the above vehicle, and removed a blanket, which was placed over the interior of the car on November 7, 1995 by SA BRADLEY GARRETT to help preserve and protect the contents of the vehicle. At approximately 10:15 a.m., the search was concluded, and SA FLOSNIK seized the following items from the vehicle (photocopy of FD-597 attached);

1. Yellow "River City" brand raincoat, size (M), found in rear driver side area of hatchback compartment.

2. One letter and envelope addressed to JUANA DEMONIA with return address in Boston, MA (front seat area).

3. One Safeway store application and drug testing release form signed by "CAROLYN E. PETITE" (front seat area).

4. One employment application in the name of JUANA DEMONIA (front seat area).

5. One plastic, Shoppers Food Warehouse shopping bag, from rear floor area of back seat, near the transmission/drivetrain hump.

6. Following U.S. currency from front seat area of vehicle:

Investigation on   11/9/95   at   Washington, D.C.

File #   91A-WF-201396

by   SA DENNIS M. CONDON,   SA MILTON D. CHALKLEY
     SA THOMAS M. FLOSNIK                   Date di

**APP. 14-2**

This document contains neither recommendations nor conclusions of the FBI. It is the prope        agency; it and its contents are not to be distributed outside your agency.

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**

United States of America
District of Columbia

vs.

Samuel B. Moore

Case No. M-16734-9
PDID No. 194-509

## JUDGMENT AND COMMITMENT/PROBATION ORDER

The above-named defendant having entered a plea of ☒ Not Guilty, ☐ Guilty to the Charge(s) of _____

(B) (Possession of Cocaine)
(C) (Possession of Heroin)

and having been found guilty by ☐ Jury ☒ Court, it is hereby ORDERED that the defendant has been convicted of and is guilty of the offense(s) charged, and is hereby SENTENCED to _As To_
Count 'C' (180) One Hundred Eighty Days
Count 'B' (180) One Hundred Eighty Days
to run consecutive to Count 'C'.

☐ MANDATORY MINIMUM term of _____ applies to the sentence imposed.

☐ MANDATORY MINIMUM term does not apply.

☒ ORDERED that the defendant be committed to the custody of the Attorney General for imprisonment for the period imposed above.

☐ ORDERED that the defendant be committed to the custody of the Attorney General for treatment and supervision provided by the D.C. Department of Corrections pursuant to Title 24, Section 803[b] of the D.C. Code [Youth Rehabilitation Act 1985].

☐ ORDERED that the defendant be placed on probation in charge of the Director, Social Services Division, and it is further ORDERED that while on probation the defendant observe the following marked conditions of probation:

☐ Observe the general conditions of probation listed on the back of this order.

☐ Cooperate in seeking and accepting medical, psychological or psychiatric treatment in accordance with written notice from your Probation Officer.

☐ Treatment for ☐ alcohol problems ☐ drug dependency or abuse as follows: _____

☐ Restitution of $_____ in monthly installments of $_____ beginning _____ (see reverse side for payment instructions). The Court will distribute monies to _____

☐ _____

Costs in the aggregate amount of $ _unfixed_ have been assessed under the Victims of Violent Crime Compensation Act of 1981, and ☐ have ☐ have not been paid.

ORDERED that the Clerk deliver a true copy of this order to appropriate authorized official(s) and that the copy shall serve as the commitment/order for the defendant.

11-22-95
Date

_____ Judge

Certification by Clerk pursuant to

11-22-95

**APP. 15-1**

_____ Deputy Clerk

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

United States of America
District of Columbia

*YCI #102*

Case No. _____

PDID No. _____

vs.

*Daniel Moore-Bey*

### JUDGMENT AND COMMITMENT/PROBATION ORDER

The above-named defendant having entered a plea of ☐ Not Guilty ☑ Guilty to the Charge(s) of _____

*C. Bail Reform Act, Misdemeanors*

and having been found guilty by ☐ Jury ☑ Court, it is hereby ORDERED that the defendant has been convicted of and is guilty of the offense(s) charged, and is hereby SENTENCED to _____

*C. 90 days in jail to run consecutive to any other sentence defendant has*

☐ MANDATORY MINIMUM term of _____ applies to the sentence imposed.

☑ MANDATORY MINIMUM term does not apply.

☐ ORDERED that the defendant be committed to the custody of the Attorney General for imprisonment for the period imposed above.

☐ ORDERED that the defendant be committed to the custody of the Attorney General for treatment and supervision provided by the D.C. Department of Corrections pursuant to Title 24, Section 803[b] of the D.C. Code [Youth Rehabilitation Act 1985].

☐ ORDERED that the defendant be placed on probation in charge of the Director, Social Services Division, and it is further ORDERED that while on probation the defendant observe the following marked conditions of probation:

   ☐ Observe the general conditions of probation listed on the back of this order.

   ☐ Cooperate in seeking and accepting medical, psychological or psychiatric treatment in accordance with written notice from your Probation Officer.

   ☐ Treatment for ☐ alcohol problems ☐ drug dependency or abuse as follows: _____

   ☐ Restitution of $_____ in monthly installments of $_____ beginning _____ (see reverse side for payment instructions). The Court will distribute monies to _____

   ☐ _____

Costs in the aggregate amount of $ *50.00* have been assessed under the Victims of Violent Crime Compensation Act of 1981, and ☐ have ☐ have not been paid.

ORDERED that the Clerk deliver a true copy of this order to appropriate authorized official and that the copy shall serve as the commitment/order for the defendant.

*12-14-95*
Date

Judge

Certification by Clerk pursuant

*12-14-95*

**APP. 15-2**

The unrelated D.C. sentence, which begins fifteen (15) days after the federal " official detention " date, is contained with the boundaries of the prior federal jurisdiction, and is therefore made to run _conterminous_ with the federal sentence No matter the length of time served credit, its purely D.C. ma

FED SRA
ARREST
11-7-95

FED SRA
SENT IM-
POSED 5-2-96

FED SRA SEN
BEGINS
12-17-96
RECEIVE
CREDIT ON
SENT

|← 15-DAYS →|

UNRELATED D.C.
SENT BEGINS
11-22-95

STATE SENT
EXPIRES
12-17-96
TURNED OV
TO FED S

In this example, the federal arrest on 11-7-95 establishes federal jurisdiction, and time spent in " official detention " is direct result of federal offense. D.C. merely housed prisoner as receiving state, imposed an unrelated outstanding sentence on 11-22-95, and then awarded time served credit to begin 11-8-95. D.C. is with-drawn from the primary judicial power of the Feds. All time spent in custody must be applied to the federal computation, regard-

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

No.  97-3142

UNITED STATES OF AMERICA,                            Appellee,

     v.

SAMUEL BERTRELL MOORE,                               Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIEF FOR APPELLEE

COUNTERSTATEMENT OF THE CASE

Appellant was indicted on nine counts of bank robbery, by force or violence, in violation of 18 U.S.C. § 2113(a) (App. 1).[1/] The charged robberies occurred between June 12, 1995, and November 7, 1995 (id.).  Under a plea agreement, appellant entered a plea of guilty to counts one, two, five, six, seven, and nine of the indictment against him (App. 2 at 1).  On May 2, 1996, the Honorable Stanley Sporkin sentenced appellant to the lowest permissible sentence within the allowable United States Sentencing Guidelines' (hereinafter "the Guidelines") guideline range, which was 151 months' incarceration on each count, to be served concurrently, followed by five years of supervised release (id.;

_____

[1/]    "App." refers to appellant's appendix.

**APP. 17-1**

2

5/2 Tr. 14).[2/]  In addition, appellant was required to pay a special assessment of $300.00 (id.).

On May 6, 1997, appellant filed a motion to vacate his sentence, pursuant to 28 U.S.C. § 2255 (App. 5).  In his motion to vacate appellant correctly claimed that he had not been advised by the court, or his counsel, of the right to appeal his sentence (id.).  The government agreed with appellant's motion, and, on September 30, 1997, appellant's original sentence was vacated and he was resentenced to the same sentence he received at the original May 2 sentencing (App. 6; 9/30 Tr. 14-16).[3/]  On October 2, 1997, a timely notice of appeal was filed with this court (App. 7).

## Appellant's May 2, 1996 Sentencing

The only issue from appellant's May 2, 1996 original sentencing relevant to this appeal was appellant's motion for a downward departure based on his alleged diminished capacity pursuant to § 5K2.13 of the Guidelines.  In support of this request appellant submitted a report of a neuropsychological evaluation of appellant conducted by Dr. Barbara Jones, who was appellant's expert (App. 8).  Dr. Jones's report makes many points; however,

---

[2/]    "5/2 Tr." refers to the May 2, 1996 transcript of appellant's sentencing before Judge Sporkin.  "9/30 Tr." refers to the September 30, 1997 resentencing before Judge Sporkin.

[3/]    There was one small change in appellant's sentence.  The term of appellant's supervised release appears to have been reduced by the district court from five years in the May 2, 1996 sentencing to three years in the September 30, 1997 resentencing (compare 5/2 Tr. 14-15 with 9/30 Tr. 15).  This change is irrelevant to the issue raised in this appeal.


APP. 17-2

United States District Court
for the District of Columbia
A TRUE COPY

NANCY MAYER-WHITTINGTON, Clerk

By _Evette R. Saunders_
Deputy Clerk

```
   SCHTT  540*23  *              SENTENCE MONITORING              *     12-08-1998
PAGE 001          *             COMPUTATION DATA                 *     16:06:38
                                 AS OF 12-08-1998
```

REGNO..: 09644-050 NAME: MOORE, SAMUEL BERTRELL

```
FBI NO...........: 602087E              DATE OF BIRTH: 04-11-1945
ARS1.............: SCH/A-DES
UNIT.............: 3                     QUARTERS.....: 3A
DET/NOTIF RMK....: YES                   NOTIFICATIONS: NO
```

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  12-01-2007 VIA GCT REL

REMARKS........: DETAINER:PAROLE VIOATION, D.C. SUPERIOR COURT - FILED BY U.S.
                 MARSHALS, E/PA.

----------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

```
COURT OF JURISDICTION...........: DIST OF COLUMBIA, DISTRICT CRT
DOCKET NUMBER...................: CR 95-319
JUDGE...........................: SPORKIN
DATE SENTENCED/PROBATION IMPOSED: 05-02-1996
DATE COMMITTED..................: 01-06-1997
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO
```

```
                  FELONY ASSESS  MISDMNR ASSESS  FINES       COSTS
NON-COMMITTED.:   $300.00        $00.00          $00.00      $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO       AMOUNT:  $00.00
```

----------------------CURRENT OBLIGATION NO: 010 ----------------------
OFFENSE CODE....:  551
OFF/CHG: 18 USC 2113(A), BANK ROBBERY (6 COUNTS)

```
 SENTENCE PROCEDURE.............: 3559 VCCLEA VIOLENT SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:  151 MONTHS
 TERM OF SUPERVISION............:    5 YEARS
 DATE OF OFFENSE................: 06-12-1995
```