2 to Ct

# ORIGINAL

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SAMUEL BERTRELL MOORE,      :
        Petitioner,           CIVIL NO. 1:CV-00-2148

                 :

    v.                   (Judge Caldwell)

                 :

DAVID ROMINE,           (Magistrate Judge Smyser)

        Respondent,          :

**FILED**
**HARRISBURG**

APR 1 2 2001

MARY E. D'ANDREA, CLERK

Per _____
        DEPUTY CLERK

## MOTION FOR RECONSIDERATION OF THE MAGISTRATE JUDGE'S RULING, DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Pursuant to Rule 72.2 of the Rules of Court, M.D. Pa., Petitioner identifies his objections to the magistrate judge's report, seeks reconsideration and prays the court for declaratory judgment and injunctive relief.

Specifically, the magistrate judge did not address the merits of Petitioner's writ of habeas corpus pursuant to §2241, but rather recommended that the petition be dismissed based on the petitioner's failure to exhaust administrative remedies. Citing, Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996)("Federal prisoners are ordinarily required to exhaust their administrative remedies before petitioning for a writ of habeas corpus pursuant to §2241.")(Emphasis added).

The magistrate judge also stressed that the basic rationale for the exhaustion requirement is that judicial review may be facilitated by the agency's development of a factual record, that judicial time may be conserved if the agency grants the relief sought, and that administrative autonomy requires that an agency be given an opportunity to correct its own errors. Citing, Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981).

## OBJECTIONS TO REPORT

Petitioner concedes that he began, but did not fully exhaust his administrative remedies, do to the insensate tone of voice and the aggressive/negative demeanor, of U.S.P. Allenwood staff, in response to his request for the appropriate form to go to the next administrative level seeking relief.

Begging the Court's indulgence, petitioner will briefly and chronologically illuminate the series of occurrences that culminated into a negative/adversarial atmosphere, between himself and Allenwood staff, whereupon, when he tried to file the appropriate form to go to the next administrative level in these instant matters, he was told "it might be a good idea to leave it alone" and that "people have lost good time for making a nuisance of themselves and filing frivolous paperwork that is a waste of time." Petitioner considered himself forewarned by the numerous admonitions of staff members when he told them that their interpretation of the record was "wrong."

**Creation of Adversarial Atmosphere:**

1. On April2, 1997, Petitioner sought remedy for grievous error in his sentence computation from the BOP. The Inmate Systems Manager's Office responded on April 8, 1997, denying the request based on various erroneous readings of the record. (See: Gov. Ex. 5 or Petit. App. 13-1,2).

2. On May 6, 1997, Petitioner filed an unrelated Motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255, in the U.S. District Court for the District of Columbia, to have his Appellant rights restored, and initiated several months of intense ongoing litigation involving his pro se petition. (See: Petit. Ex.2,

pp. 6-8, items 24 thru 34 [Resentencing]).

3.    On June 27, 1997, the sentencing court, Judge Stanley Sporkin, granted petitioner's motion and vacated his sentence.

4.    On September 10, 1997, a writ of habes corpus ad prosequendum was issued to the Warden, U.S.P. Allenwood, PA, and shortly there-after, petitioner left Allenwood for his hearing in U.S. District Court for the District of Columbia.

5.    On September 30, 1997, petitioner was resentenced to the same sentence with three significant changes:  (1) the restoration of his appellant rights,  (2)  **given credit for time served,**  (3)  re-duction in supervised release from five years to three years.  How-ever, while petitioner's new (second) judgment & commitment now re-flected **" credit for time served,"** it did not reflect the change in his supervised release from five years to three years.  (See: Petit. App. 4-1 thru 4-3).

6.    After some delay in Washington, D.C., petitioner was returned, several months later, to Allenwood, PA.

7.    On January 6, 1998, petitioner initiated a request for relief to Mr. F.T. Mummaw, Associate Warden UNICOR, U.S.P. Allenwood, PA, to correct promotional practices, on his job site, that he felt were despotic, discriminatory, and insidious in their application.  More than nine (9) months later this request for Administrative Remedy was denied by the Warden.  (See: Attachment).

Sometime after his return from being resentenced, petitioner, now in possession of his new judgment & commitment sheet, with its pronouncement of **"credit for time served,"** began to once again in-quire regarding the grievous error in his sentence computation from the BOP.  It was into the volatile whirlwinds of the foregoing

chronicle of conflict that petitioner made his inquiries, and within this adversarial atmosphere petitioner was thwarted in his attempt to pursue a remedy, told to "leave it alone." Shortly thereafter, petitioner was transferred out of U.S.P. Allenwood to FCI - Schuylkill, Minersville, PA.

Ordinarily, federal prisoners are required to exhaust their administrative remedies, however, given the totality of these extraordinary circumstances, where, at the time of petitioner's further inquiries pertaining his 400 days credit for time served, he was exhausting his administrative remedies pertaining another matter leading up to a civil suit for discrimination and damages incurred at his prison work site. Consequently, he was obstructed from further inquiry into these instant matters. Result depends on cause. Petitioner prays that the Court will grant him Reconsideration, schedule a hearing on the merits of his §2241 Motion, and resolve the adverse interest of this instant controversy, to the benifit of both the BOP and petitioner, in the interest of justice.

### PRAYER FOR DECLARATORY JUDGMENT

Pursuant to 28 U.S.C. §1331 and §2201(a), the court has jurisdiction, in this case of actual controversy, to declare the rights and the legal relations of petitioner and the BOP, pursuant to Article III, Section 2 of the Constitution of the United States, where there is the existence of a "case or controversy." See Travelers Ins.Co. v. Obuser, 72 F.3d 1148, 1154-55(3d Cir.1995); and Allen v. Wright, 468 U.S. 737,751,82 L.Ed.2d 556, 104 S.Ct. 3315(1984) (To meet the standing requirements of Article III, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.")

The meritorious record of these instant matters affirmatively shows petitioner has clearly alleged facts invoking the courts jurisdiction over this immedicate and substantial controversy, to warrant the issuance of a declaratory judgment.

## Adversity of Interests:

The BOP has increased petitioner's sentence by 400 days, contrary to the pronouncement of the sentencing court, and said deprevation has created adverse legal interests, a substantial threat of real harm, and the threat shall remain real and immediate throughout the course of this litigation.  The instant issues are not based on hypothetical facts.  Petitioner relies on the merit of the record he has established in this instance, to amplify the magnitude of his hardship and warrant the issuance of declaratory judgment.  See Johnson v. Guhl, 91 F.Supp.2d 754,766-67(D.N.J.2000); and Philadelphia Federation of Teachers v. Ridge, 150 F.3d 319,323(3d Cir. 1998).

## Conclusiveness and Utility:

The concrete facts of this case show that petitioner's sentence has been increased by 400 days, by an actual wrong committed by the BOP.  The court may engage in its fact finding role and declare petitioner's rights based on a hearing, to clarify and substantiate a record that will guide the BOP and petitioner in their future conduct with EACH other.  In the interest of justice, provide a means for determination of a bona fide controversy which can be settled more satisfactorly in an action for declaratory judgment than in the ordinary form of administrative remedy.  Given the erroneous reading of records accessed and possessed by the BOP.  See Armstrong World

Industries, Inc. v. Adams, 961 F.2d 405,412(3d Cir.1992)(Without
the necessary facts, the court is left to render an advisory opin-
ion).

Petitioner's loss will not occur, and his asserted rights
will not be invaded, until he has finished serving what amounts
to the 151 months pronounced by the sentencing court, and then
begins to serve the extra 400 days wrongfully conjoined and added
to his sentence through miscalculation by the BOP.  Petitioner
prays for the declaration of his rights before the hardship matures.
There is no uncertainty that the loss will occur or that the assert-
ed right will be invaded, unless, the court removes the doubt and
declares the rights of all interested parties.  Petitioner does not
attempt to provide a substitute for exhaustion of administrative
remedies, but rather, to appropriate the rights of petitioner as
well as the rights of the BOP, and nothing more, where compelling
and unusual circumstances exist.  See Algrant v. E.V.N.L.P., 126
F.3d 178,190(3d Cir. 1997)(Court's "may declare the rights and other
legal relations of any interested party seeking such declaration,
whether or not further relief is or could be sought.")

According to the Advisory Committe Note to Federal Rule of
Civil Procedure 57 entitled Declaratory Judgment, "the existence
or non-existence of any right, duty, ...or immunity... may be de-
clared."  As the district court correctly noted, Rule 57 does not
preclude the exercise of jurisdiction where another adequate remedy
exists.  One comentator formulates the test for whether the district
court should exercise federal jurisdiction when a parallel state
court action exists as a determination of "which will most fully

6.

serve the needs and convenience of the parties and provide a
comprehensive solution of the general conflict."  10A Wright,
Miller, Kane, Federal Practice and Procedure §2758(West 1983)
(Cited, U.S. v. Com. of PA., Dept. of Envir. Resources, 923 F.2d
1071,1074-75 (3d Cir. 1991).

There is no good reason to force petitioner through ad-
ministrative process, where in good faith he attempted to exhaust
remedies, but was thwarted, and now he is advancing a substantial
complaint that the BOP has abused its "interpretive" authority,
and the administrative action which deprived him of 400 days of his
sentence is unconstitutional.  Under the extraordinary circumstances
of these instant matters, it will be a waste of time to seek admin-
istrative remedy from the same agency whose actione are being chal-
lenged.  The same agency from whom the government retrieved its er-
roneous interpretation of information now in this instant record, to
file its response to petitioner's §2241 Motion.

For substantial cause shown, petitioner prays the court will
grant a hearing to declare the rights of all interested parties.

### PRAYER FOR INJUNCTIVE RELIEF

There is a strong likelihood of success on the merits of
petitioner's claim, and he will inevitably succeed.  There is an
actual possibility of irreparable harm if the injunction is not
granted, and injury has already occurred and been shown by the BOP's
continual deprivation of 400 days of petitioner's sentence.  There
is no possibility of irreparable harm to the BOP or any other party
if the injunction is granted and petitioner's "credit for time served"
is restored to him.  The public has a very substantial interest in not
having a significant portion of petitioner's sentence arbitrarily

AND CAPRICIOUSLY TAKEN AWAY BECAUSE OF ERRONEOUS EVALUATION OF BOP RECORDS BY BOP STAFF. SOCIETY IS FURTHER SERVED BY PRESERVATION OF THE INTEGRITY OF THE CRIMINAL JUSTICE PROCESS, AND MORE PROFOUNDLY, IT HAS AN INTEREST IN TREATING PETITIONER, AND ALL PRISON- ERS, WITH BASIC FAIRNESS TO ENHANCE THE CHANCE OF REHABILITATION BY AVOIDING NEGATIVE AND ANTI-SOCIAL BEHAVIORAL REACTIONS TO SAID ARBITRARINESS. PETI- TIONER HAS A RIGHT AND A DUTY TO PRESERVE A REASONABLE EXPECTATION TO BE RESTORED, ON TIME, TO A NORMAL AND USEFUL LIFE WITHIN THE LAW. SEE, OPTICIANS ASS'N OF AMERICA v. INDEP. OPTICIANS OF AMERICA, 920 F.2d 187, 191-92 (3d CIR. 1990); BRADLEY v. PITTSBURGH BD. OF EDUC., 910 F.2d 1172,

1175 (3d Cir. 1990); AND, CLEAN OCEAN ACTION v. YORK, 57 F.3d 328, 331 (3d Cir. 1995).

PETITIONER IS NOT CONCERNED, AT THIS JUNCTURE, WITH ECONOMIC LOSS OR MONETARY GAIN. THE WRONGFUL DEPRIVATION OF HIS LIBERTY IS AN IRREPARABLE AND IMMINENT INJURY TO HIS LIFE OF SUCH PECULIAR NATURE THAT, ONLY ITS RESTORATION CAN ATONE. SEE, A.O. SMITH CORP. v. F.T.C., 530 F.2d 515, 525 (3d Cir. 1976); AND, ACIERNO v. NEW CASTLE COUNTY, 40 F.3d 645, 653 (3d Cir. 1994).

PETITIONER FURTHER SUPPORTS, ON REAL AND CONCRETE FACTS, THE INEVITABLE ACTUAL SUCCESS OF THE MERITS OF HIS CLAIM, WITH AN

INDISPUTABLE GOOD FAITH SHOWING OF LITIGATION

FILED SHORTLY AFTER HIS INITIAL ARREST ON

NOVEMBER 7, 1995, BY FEDERAL AUTHORITIES FOR

BANK ROBBERY, TITLE 18 U.S.C. § 2113 (a), WHERE,

AN ARREST STARTS THE CLOCK (SPEEDY TRIAL ACT)

ONLY IF IT IS IN CONNECTION WITH FEDERAL CHARGES.

INDICTMENT WAS ON DECEMBER 7, 1995. (SEE

PETIT. EX. 2, p. 5, ITEM 12) ALSO, (SEE ATTACHMENT:

MOTION TO DISMISS THE INDICTMENT) AND, U.S. v.

MILLS, 964 F. 2d 1186, 1188-89 (D.C. CIR. 1992)

(EN BANC).

PETITIONER CANNOT CHARGE, WITH CLEAR

CONSCIENCE, THAT THE BOP IS INTENTIONALLY

FLOUTING THE LAW, ONLY THAT IT IS WRONG IN

ITS INTERPRETATION OF THE RECORD, AND SUBSEQUENT INJURIOUS APPLICATION OF ITS ADMINISTRATIVE AUTHORITY. AS AN AGENCY, THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT REQUIRES THAT THE BOP's ACTIONS BE CONSISTENT WITH THE FUNDAMENTAL PRINCIPALS OF LIBERTY AND JUSTICE WHICH BE AT THE BASE OF OUR CIVIL AND POLITICAL INSTITUTIONS, WHICH NOT INFREQUENTLY ARE DESIGNATED AS THE "LAW OF THE LAND." HEBERT v. LOUISIANA, 272 US 312, 316-17, 47 S. Ct. 103, 71 L.Ed. 270 (1926). "BY THE LAW OF THE LAND, IS MOST CLEARLY INTENDED, THE GENERAL LAW; A LAW, WHICH HEARS BEFORE IT CONDEMS; WHICH PROCEEDS

11.

UPON INQUIRY, AND RENDERS JUDGMENT ONLY AFTER TRIAL." <u>TRUSTEES OF DARTMOUTH COLLEGE v. WOODWARD</u>, 17 U.S. 518, 4 WHEAT. 518 (1819) (MR. DANIEL WEBSTER).

## <u>CONCLUSION</u>

<u>WHEREFORE</u>, PETITIONER PRAYS THAT THE COURT WILL RECONSIDER THE MAGISTRATE JUDGE'S RULING, HEAR HIS PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF, AND GRANT A HEARING TO DETERMINE THE MERITS OF HIS CLAIM OR ANY FAVORABLE ALTERNATIVE THE COURT DEEMS FIT AND PROPER.

RESPECTFULLY SUBMITTED,

S. Moore Bey

SAMUEL B. MOORE-BEY, PRO SE

12.

## <u>CERTIFICATE OF SERVICE</u>

I CERTIFY THAT I HAVE CAUSED TO BE FORWARDED, BY U.S. CERTIFIED MAIL, THE ORIGINAL AND TWO (2) COPIES OF MY MOTION FOR RECONSIDERATION OF THE MAGISTRATE JUDGE'S RULING, DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF, TO THE CLERK OF THE COURT FOR THE MIDDLE DIST. OF PA, 228 WALNUT STREET, P.O. BOX 983, HARRISBURG, PA 17108, TO BE SERVED ON ALL INTERESTED PARTIES IN THESE INSTANT MATTERS, ON THIS <u>8TH</u> DAY OF APRIL, 2001.

S. Moore Bey

SAMUEL B. MOORE-BEY, PRO SE

13.

# EXHIBITS

LEAVENWORTH, KANSAS

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**INMATE REQUEST TO STAFF MEMBER**

DATE   January 6, 1998

TO: Mr. F. T. Mummaw, Associate Warden UNICOR, FCC
<br>(Name and title of officer)

RE:   The Record

SUBJECT: State completely but briefly the problem on which you desire assistance, and what you think should be done (Give details

I have been employed by UNICOR since February 1997. During that period, to date, I have been allowed over-time work on one(1) occasion (eleven months!). I recently inquired about a grade-level raise. I was told that in order for me to move from grade-3 to grade 2, I must be able to build the Queen Ann Chair line. Upon investigation, I found this to be untrue. Men similarly situated, who work with me in the production area,
<br>(Use other side of page if more space is needed)
have not been made to build Queen Ann's before receiving a grade advancement I have no educational restrictions (possess two college degrees), and no fir These current arbitrary and capricious practices are both discriminatory and contrary to UNICOR policy. Please look into this serious matter with a hope of correcting it. Thank you.

NAME: Samuel B. Moore-Bey

No.: 09644-050

Work assignment: UNICOR-5

Unit: 4-B

NOTE: If you follow instructions in preparing your request, it can be disposed of more promptly and intelligently. You will be interviewed, if necessary, in order to satisfactorily handle your request. Your failure to specifically state your problem may result in no action being taken.

cc: file; Mr. D.L. Frank, Factory Manager

DISPOSITION: (Do not write in this space)

DATE

Officer

Original – File
Copy – Inmate

ALF-1330.13B
March 1, 1997
Attachment 1

## United States Penitentiary
## Allenwood, Pennsylvania

ADMINISTRATIVE REMEDY PROCEDURE FOR INMATES
INFORMAL RESOLUTION FORM

NOTE TO INMATE: You are advised that prior to receiving and filing a Request for Administrative Remedy Form BP-9 (BP-229 13), you MUST attempt to informally resolve your complaint through your correctional Counselor. Briefly state ONE complaint below and list what efforts you have made to resolve your complaint informally and state the names of staff contacted.

Issued By: _____ Initials of Correctional Counselor
Date Issued To The Inmate: __7/27/98__

INMATE'S COMMENTS: I have been employed by UNICOR for 18 months. My last pay increase was June 1, 1997(Grade 3). Since then (13 mos.) I have been
1. Complaint: arbitrarily and systematically excluded from advancement into available pay increase slots, contrary to the provisions of 28 CFR Ch. 3 Specifically, 28 CFR Ch. 3, Subpart C, §345.30, and other subparts which set standards under color of Federal law, and prohibits discrimination as unlawful conduct.
2. Efforts you have made to informally resolve: I have spoke with both Manage and formen to no avail.

3. Names of staff you contacted: Mr. Stevenson, Unit Manager Unit 4, Mr. Man UNICOR Factory Manager, Mr. Holms, Forman, Mr. Deal, Forman, Mr. Spade, Forman. Have written to: Mr. F.T. Mummaw, Associate Warden UNICOR, Mr. D.L. Frank, Past Factory Manager.

Date Returned to Correctional Counselor: __8/4/98__

_S. Moore Bey_          __09644-050__     __8/3/98__
Inmate's Signature          Reg. Number          Date

cc: file
CORRECTIONAL COUNSELOR'S COMMENTS:

1. Efforts made to informally resolve and staff contacted: _____
    _All attached response + documents_

Date BP-9 Issued: _____
                                        _____
                                        Correctional Counselor

                                        _____ 8/28/___
                                        Unit Manager (Date)



UNITED STATES GOVERNMENT
MEMORANDUM
Federal Prison Industries
UNITED STATES PENITENTIARY
Allenwood, Pennsylvania    17887

8-24-98

MEMORANDUM FOR G. MANTHEY, UNICOR, FACTORY MANAGER

FROM R. HOLMES, UNICOR, UPHOLSTERY FOREMAN

SUBJECT:  Inmate Moore #Ø9644-Ø5Ø

This memo is in response to a BP-9 that I am in receipt of concerning inmate Moore. This inmate alleges that he has been discriminated against because he has not received a promotion recently.   The inmate brought to me a light duty slip from the hospital restricting his ability to work.  Mr. Greg Holmes and I discussed what we should do with this inmate because his performance was so poor.  We had an opening for someone to file tickets that required very little work.  In fact, the inmate that previously had been doing the job was a grade 2, but when he was not working on tickets, he also upholstered.  Inmate Moore has not been promoted because his work performance does not dictate that he receive a promotion.  He is solely responsible for tracking which inmates receive which pieces of furniture.  In fact, most of inmate Moore's day is spent standing around with nothing to do.  He has never come to me and asked if there were anything that he could do on top of what little he was currently doing, and certainly never showed any initiative in doing the job he was charged with.   It will be my recommendation that this inmate be removed from this ticket job, put on an upholstery table where he will be able to earn a grade promotion.  It is also my opinion that with the scant work load that this inmate has presently, he will never be eligible for a promotion.

cc:  file

John F. Fanelli

U.S. DEPARTMENT OF JUSTICE                                    **REQUEST FOR ADMINISTRATIVE REMEDY**
Federal Bureau of Prisons

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: Moore–Bey, Samuel B. | 09644–050 | 4–B | USP Allenwood |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST** For the record. This is a response to the attached BP-8. Mr. R.Holmes, UNICOR Foreman, has provided severe omissions in his emotional and ludicrous response. For requesting a well earned twenty-three cent pay increase, he has insulted the integrity of myself and others similarly situated. The foll-ing is true to the best of my recollection: On 2-3-97, I was hired by UNICOR, assigned to the upholstery section. On 6-1-97, I was promoted to Grade-3. From 2-3-97 until 3-27-98, I worked at upholstery in compliance with all work standards pertaining to my work assignment. Good personal conduct. Good punctuality. Good quality productivity(no re-cuts). All performance appraisals were good except for the last(which I did not sign). For eighteen mos. I'v been subjected to a system of favoritism and select discrimination regarding over-time work and grade level increases. Seriously concerned, on 1-6-98, I wrote to Mr. Mummaw, Associate Warden UNICOR, and sent a copy to Mr. Frank,Factory Manager(at that time)See Attach. No verbal or written reply was received, but there were subtle negative responses from several Foreman which implied "I would never be eligible for a promotion". January 1998, I began to have problems with my right hand. I could not raise my second finger by force of will. It would stick to my palm and had to be raised by my left hand. I was alarmed,but continued to work. On 2-12-98, I went to sick call because my hand had become inflamed. Diagnosis was a "trigger finger" caus

| DATE 9-3-98 | *S. Moore-Bey* SIGNATURE OF REQUESTER (See Atta |
|---|---|

**Part B– RESPONSE**

This office is in receipt of your request for Administrative Remedy dated September 3, 1998, in which you request consideration for a pay increase within UNICOR.

Institution Supplement, ALP-1020.01 D (2), dated July 1, 1998, entitled FPI Work Programs for Inmates states, "Promotions are earned by performance. Inmates my be promoted when they demonstrate good work performance, an opening exists, time-in-grade and education requirements have been completed and the supervisor recommends the promotion.

My investigation into this matter reveals that promotions within UNICOR are in accordance with the written procedures identified above. Your latest work evaluation from January through March, 1998, indicates a total score of 2 out of a possible 50 points. This evaluation was provided to you by S. Diehl, Foreman; however, you refused to sign the form. This indicates that your reflection of your work performance differs from that of your foreman.

| 9/24/98 | *John F. Franullo* |
|---|---|
| DATE | WARDEN OR REGIONAL DIRECTOR |

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                          CASE NUMBER: 167877-F1

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
                LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

| DATE | RECIPIENT'S SIGNATURE (STAFF MEMBER) |
|---|---|

BP-229

Samuel B. Moore-Bey
Page Two Of Two
September 3, 1998

<u>Request For Administrative Remedy</u>(Con'd)

by a repetitive motion injury. My skill impaired, I received a one day idle,
and continued to work. On 2-23-98, I returned to sick call and it was confirm-
ed that my "trigger finger" was the result of a repetitive motion injury cau
by the repetitious use of an upholstery tool called a "pick". The "pick" is
small version of an ice pick, and is used to dig staples out of the frame of
furniture. The end of the pick handle fits into the palm of the hand, and re
peated pressure caused a blockage in the second finger of my right hand. I t
the physician assistant that I did not want a lay-in, and would prefer to co
tinue work if possible. The compromise was that I could continue to work, bu
I was restricted from any repetitive motion with my right hand for 90 days.
(See Attach. B). Upon giving said restricted duty slip to Mr. Deal, Foreman, h
said "you can grab a broom", and added that he would never force someone to
who had an injury. I elected to continue to work in upholstery with my left
My production speed slowed down, but I received no re-cuts. To my knowledge,
Administrative Form 19, Injury Report(Inmate), was ever filed in this instan
matter - even though my injury is work related. Mr. Greg Holmes, Foreman(at t
time), reassigned me on 3-27-98, as a Ticket-Line-Filing-Clerk to replace ano
inmate who was a Grade-2. It was of course my understanding that by acceptin
the job I would not be restricted to Grade-3. My duties are: To log in the w
order no.; item no.; frabic no.; lot no.; name of upholsterer; style of chair, w
every chair that is put on line every day; walk the tickets to final QA statio
so they will be there when the finished chairs arrive; keep track of all tick
of completed chairs until the order is completed(which sometimes takes weeks
log-in and file all tickets of all complete orders; at end of each day submit
Foreman a copy of all chairs put on line by all Foreman and two assembly lin
each day; add total price of all chairs put on line each day. All records are
up-to-date and verifiable by the records(given they still exist). As stated,
the inmate who had the job before me was Grade-2. The inmate before him was
Grade-1. Same job. No extra upholstering was mandated for either, but availa
to both via over-time. On 3-31-98, Mr. Deal, Foreman, presented me with an ex-
ceptionally low performance appraisal. We both knew he was aware of my
medical situation and my efforts to remain productive in spite of. I refused
sign it. I felt it was unfair(See Attach. D).(See: BOP-Program Statement 104
Recently, I met with an Orthopedic Surgeon who wanted to perform a surgical
operation on my hand. We discussed it, and I subsequently chose a hypodermic
injection, by him, into the palm of my hand. Medication was shot into my seco
finger from the inside(See Medical Jacket).
On 7-20-98, Mr. Stevenson, Unit 4 Unit Manager, Mr. Manthey, UNICOR Factory Ma
ger, and myself, met in Mr. Manthey's office to discuss these instant matter
I was informed that his (Mr. Manthey's) hands were tied. If the Foreman didn'
put me in for a pay increase there was nothing he could do. I have followed
instructions and continued doing my job. I think I understand his position, a
so I am utilizing this equitable remedy seeking equitable relief.
In conclusion, I believe that discrimination on the basis of my age, race or
handicap in job assignments, pay increases, etc., is a deprivation of my right
to equal protection secured by the Fifth Amendment, and any retaliation again
me for seeking to preserve what ever substantive rights I possess by seeking
equitable redress is an infringement on my Frist Amendment rights. I don't t
I have a right to any job or particular job assignment in this prison, but I
certain I have a right to equal protection and equal treatment. I am entitle
to the relief sought in these instant matters.

cc : file

*attachments*

Respectfully submitted,

*S. Moore Bey*

Samuel B. Moore-Bey

*09644-050*

Date: September 21, 1998
A/R Number: 167877-F1
Inmate Name: MOORE, Samuel
Register Number: 09644-050
Page 2


The factory is currently completing the April through June, 1998, evaluations.  It is my understanding that if you have met all the requirements stated above and the grade is available, you will be considered. However, I do not physically observe the operations on a day to day basis within the factory.  Therefore, I can not dictate promotions to the factory staff.  I am confident the Factory Manager is able to oversee the operation.

Therefore, your request for administrative remedy is denied.

NAME: MOORE, SAMUEL

REGISTER NUMBER: 09644-050

DETAIL:  UNICOR 5

SUPERVISOR: G. WOLTZ

**U.S. Department of Justice**

# UNICOR
Federal Prison Industries, Inc.

U.S.P. Allenwood
P.O. Box 3500
White Deer, PA  17887

YOU HAVE HEREBY BEEN PROMOTED TO GRADE   3   .

EFFECTIVE    JUNE 01, 1997

CONGRATULATIONS,

UNICOR

**" A "**

---

## UNITED STATES PENITENTIARY
## ALLENWOOD, PENNSYLVANIA

### IDLE, CONVALESCENT AND CHANGE IN WORK CLASSIFICATION STATUS

TO:  ALL CONCERNED     INMATE'S NAME: _MOORE_     UNIT: _4-13_     DATE: _2/23/98_

DETAIL: _UNICOR_     REG. NO.: _09644-050_

*For Medical purposes, the inmate named above has been authorized the work and/or activity status listed below the reason(s) and the time shown.*

## MEDICAL CLASSIFICATION STATUS: (Check one and answer questions)

( )  IDLE: Reason_____     THRU 12 MIDNIGHT_____, 19___

( )  CONVALESCENCE: List any restricted activity for medical reasons. _____     THRU 12 MIDNIGHT_____, 19___

(X)  RESTRICTED DUTY: Specify exact restriction and reason. _(90) DAYS_     THRU 12 MIDNIGHT _5/24/98_, 19___

( )  TOTALLY DISABLED: _NO REPETITIVE_     THRU 12 MIDNIGHT_____, 19___

( )  FULL DUTY: _MOTION WITH RIGHT HAND_

Physician or Physician Assistant

### DEFINITIONS AND INSTRUCTIONS

**IDLE STATUS** - Temporary disability not to exceed three days duration including weekends and holidays. Restricted to room except for meals, barbering, religious services, sick call, visits and call outs. No recreation activity.

**CONVALESCENT STATUS** - Recovery period for operation, injury, or serious illness. Not less than four days and not to exceed thirty days, subject to renewal. Excused from work and may not participate in any recreational activities outside the unit.

**RESTRICTED DUTY** - Restricted from specific activities because of physical or mental handicap. List handicap, work limitation and time period. either specific date or indefinite.

**TOTALLY DISABLED**- Totally unemployable and unassigned because of mental or physical reasons. Condition generally expected to last indefinitely.

**FULL DUTY** - No work restrictions because of physical, medical or mental disability.

WHITE - FILE COPY  CANARY - MEDICAL RECORDS  BLUE - DETAIL SUPERVISOR  PINK - UNIT OFFICER

*Last seen on 13th*

**" B "**

1. NAME: **MOORE, SAMUEL**  UNICOR 5  4-B

2. REGISTER NUMBER: |0|9|6|4|4|  |0|5|0|

**2ND QUARTER**

EVALUATION BEGIN DATE
M M D D Y Y
|4|2|8|

INSTITUTION CODE
|4|2|8|

INDUSTRY CODE
|1|1|3|8|

EVALUATION END DATE
M M D D Y Y
|7|8|0|3|8|10|3|8|

WORK ASSIGNMENT DOT CODE
|0|6|3|1|9|8

Rating Scale: 1 = Much Worse than Average    2 = Worse than Average    3 = Average
4 = Better than Average    5 = Much Better than Average

Inmate's Initials

Supervisor's Initials

- Punctuality
- Attitude on Job
- Accident Proneness
- Relations with Others
- Follows Orders
- Works Independently
- Work Habits
- Level of Skill
- Effort
- UNICOR Employment Recommendation
- Total

Comment

---

**3RD QUARTER**

EVALUATION BEGIN DATE
M M D D Y Y
|0|1|0|9|8|

INSTITUTION CODE
|4|2|8|

INDUSTRY CODE
|1|1|3|8|

EVALUATION END DATE
M M D D Y Y
|0|3|3|1|9|8|

WORK ASSIGNMENT DOT CODE
|7|8|0|3|8|0|8

Rating Scale: 1 = Much Worse than Average    2 = Worse than Average    3 = Average
4 = Better than Average    5 = Much Better than Average

Inmate's Initials  SMC

Supervisor's Initials  |3|3|3|3|3|3|3|3|3|3|  |20|

- Punctuality
- Attitude on Job
- Accident Proneness
- Relations with Others
- Follows Orders
- Works Independently
- Work Habits
- Level of Skill
- Effort
- UNICOR Employment Recommendation
- Total

Comment  HM Refused to Sign

---

**4TH QUARTER**

EVALUATION BEGIN DATE
M M D D Y Y
|0|4|0|1|9|8|

INSTITUTION CODE

INDUSTRY CODE

EVALUATION END DATE
M M D D Y Y

WORK ASSIGNMENT DOT CODE

Rating Scale: 1 = Much Worse than Average    2 = Worse than Average    3 = Average
4 = Better than Average    5 = Much Better than Average

Inmate's Initials

Supervisor's Initials

- Punctuality
- Attitude on Job
- Accident Proneness
- Relations with Others
- Follows Orders
- Works Independently
- Work Habits
- Level of Skill
- Effort
- UNICOR Employment Recommendation
- Total

Comment

---

Inmate's Initials

Supervisor's Initials

**ORIGINAL - Stays with UNICOR**
**COPIES - One copy to Case Manager, Each Quarter Calendar Year**

FPL 44
01-04-85

"D"

*Deft's Copy*

Sporkin J.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Cr 95 - 319

UNITED STATES OF AMERICA          )
                                  )   CRIM. NO. ~~95-0061M-01~~   **FILED**
           V.                     )            95-681M-01
                                  )                              DEC 26 1995
SAMUEL B. MOORE-BEY               )

CLERK, U.S. DISTRICT C
DISTRICT OF COLUM

## MOTION TO DISMISS THE INDICTMENT

Defendant, Samuel B. Moore-Bey, having been charged in a criminal complaint, on <u>November 8, 1995</u>, with by intimidation, taking from the person and presence of another, money belonging to, and in the possession of Crestar Bank, 300 Pennsylvania Avenue, S.E., Washington, D.C., the deposits of which were insured by the Federal Deposit Insurance Corporation (FDIC), in violation of 18 U.S.C. § 2113 (a), moves the Court, pursuant to the Federal Rules Of Criminal Procedure Rule 48 (b), 18 U.S.C. § 3161-3174, and applicable Const. Amend(s)., to dismiss the indictment in this instant matter, with prejudice.

## STATEMENT OF FACTS

On November 7, 1995, the Crestar Bank, 300 Pennsylvania Avenue, S.E., Washington, D.C., was robbed by intimidation (a note), and the defendant was subsequently arrested in connection with said robbery, later that same day.

On November 8, 1995, a Warrant For Arrest, and a Criminal Complaint were issued (See Attachments), for the defendant who was still in custody, by the Honorable Alan Kay, U.S. Magistrate Judge, U.S. District Court For The District Of Columbia. The defendant has been in the care and custody of the U.S. Attorney General since November 7, 1995. The initial arrest was made in connection with formal charges brought.

## POINTS AND AUTHORITIES

The right to a speedy trial has both statatory and constitutional support. The Federal Rules Of Criminal Procedure also protect defendants from undue delay. The Speedy Trial Act, 18 U.S.C. § 3161(b)(1988), limits preaccusation delay, stating:

> (b) Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an

individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

The 30-day period applies only to offenses in original complaint for which defendant was charged when arrested. See: U.S. V. Velasquez, 890 F.2d 717, 719 (5th Cir. 1989); and, U.S. V. Nabors, 901 F.2d 1351, 1355 (6th Cir. 1990).

The Fifth Amendment provides that, "no person shall...be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. The Fourteenth Amendment imposes the identical limit on the states. U.S. Const. amend. XIV. The Sixth Amendment provides that, "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The Sixth Amendment speedy trial guarantee is binding on the states through the Due Process Clause of the Fourteenth Amendment. See: Klopfer V. North Carolina, 386 U.S. 213, 222-23(1967). This Sixth Amendment speedy trial right is triggered by the actual restraints imposed by arrest only if the arrest leads directly to formal criminal charges being instituted and prosecution begins. See: U.S. V. MacDonald, 456 U.S. 1, 6-7(1982); U.S. V. Marion, 404 U.S. 307, 320(1971); U.S. V. Velasquez, 890 F.2d 717, 719-20(5th Cir. 1989); and, U.S. V. Nabors, 901 F.2d 1351, 1355(6th Cir.), cert. denied, 111 S. Ct. 192 (1990).

The Federal Rules Of Criminal Procedure 48(b), is limited to postarrest situations, and the arrest must be for charges in indictment that defendant seeks to dismiss. It authorizes dismissal for any unnecessary delay by government in presenting charge to grand jury, filing information, or bringing defendant to trial. See: U.S. V. Marion, 404 U.S. 307, 319(1971); and, U.S. V. Reme, 738 F.2d 1156, 1164(11th Cir. 1984).

The Supreme Court has held, that impairment of defense is the most important interest protected by speedy trial guarantee. This guarantee also protects against the impact of undue impairment of liberty. Dismissal is the only possible remedy for violation of Sixth Amendment speedy trial rights. See: Barker V. Wingo, 407 U.S. 514, 532(1972); Strunk V. U.S., 412 U.S. 434, 439-40 (1973); Doggett V. U.S., 112 S. Ct. 2686, 2692(1992); and, Wells V. Petsock, 941 F.2d 253, 257-58(3rd Cir. 1991). Along with a four-part test to analyze a defendant's Sixth Amendment speedy trial claim, the Barker Court also set down a criterion requiring the court to consider any prejudice to the defendant in light of the liberty interest protected by speedy trial rights. Three such interests are:

(1) preventing oppressive pretrial incarceration; (2) mini-

mizing anxiety and concern; and (3) limiting the possibility that delay will impair the defense.

In Doggett, the Court held that a presumption of prejudice established by the first Barker criterion may alone constitute a sufficient showing of prejudice to the defendant, vitiating the need for a showing of actual prejudice where "the presumption of prejudice, albeit unspecified, is neither extenuated...nor persuasively rebutted." See: Doggett, 112 S.Ct. at 2694. Accordingly, "consideration of prejudice is not limited to the specifically demonstrable...and affirmative proof of particularized prejudice is not essential to every speedy trial claim." See: Moore V. Arizona, 414 U.S. 25,26(1973).

The defendant's degree of anxiety suffered is immeasureable, and the magnitude of his distress is a conflict that cannot be told in words. In the past, defendant has been diagnosed as having a Bipolar Affective Disorder (Manic-Depressive), his fears are now multiplied, often times, to the equivalent of the terrors of death. According to the Supreme Court, "little can be said on when a delay becomes presumptively improper, for the determination necessarily depends on the facts of the particular case." See: U.S. V. $8,850, 461 U.S. 555, 556(1983); U.S. V. Greer, 655 F.2d 51, 52-53(5th Cir. 1981); and, U.S. V. Holyfield, 802 F.2d 846, 848(6th Cir. 1986).

WHEREFORE, in the light of pro se litigation, these instant matters being neither unusual nor complex, the defendant prays, this Honorable Court, shall preserve and grant his Motion To Dismiss The Indictment, with prejudice.

/s/ S. Moore-Bey
Samuel B. Moore-Bey, pro se
DCDC 141-821
Box 498 - Youth Center #
Lorton P/Va. 22199

## CERTIFICATE OF SERVICE

I hereby declare that the Original and two (2) copies of this Motion To Dismiss The Indictment, has been mailed this 18th day of December , 1995, to the Clerk Of The Court, United States District Court For The District Of Columbia, to be served on all interested parties.

ATTACHMENT(S)
cc: Ms. Reita Pendry, Esq.
    Federal Public Defender Service
    625  Indiana Avenue, N.W.    Suite 550
    Washington, D.C.  20004